Territory v. Toyota, 19 Haw. 651.

## TERRITORY *v.* TOYOTA.

### APPEAL FROM DISTRICT MAGISTRATE, HONOLULU.

ARGUED NOVEMBER 8, 1909.          DECIDED DECEMBER 1, 1909.

### HARTWELL, C.J., WILDER AND PERRY, JJ.

CONSTITUTIONAL LAW—*auction license fees.*

> Section 1343, R. L., is not unconstitutional in its requirement for an auction license of a fee of $600 for the district of Honolulu and $15 for each other taxation district.

AUCTIONS AND AUCTIONEERS—*public auctions.*

> Upon the agreed facts the defendant conducted a public auction within the meaning of the statute.

### OPINION OF THE COURT BY PERRY, J.

#### (Wilder, J., dissenting.)

Defendant appeals on points of law from a conviction before the district magistrate of Honolulu of the offense of "selling goods, wares and merchandise at auction in the district of Honolulu without first obtaining a license as auctioneer." Section 1343 of the Revised Laws requires an annual fee for a license to sell goods, wares and merchandise or other property "at auction," naming a fee of $600 for the district of Honolulu and $15 for each other taxation district. The defendant's points are that under that section licenses are required only for sales at *public* auction, that the facts proved constitute no offense and that the statute improperly discriminates between residents and citizens of the district of Honolulu and those of the other districts and is contrary for that reason to the 14th amendment of the constitution. The only other portion of the statute which can be invoked as throwing any light on the meaning of the words "at auction" in section 1343 is the requirement in Sec. 1345 that the bond given by each auctioneer "upon receiving an auction license" shall contain a pro-

vision "that he will not sell goods, wares, merchandise or other property except at public auction." It is not clear that there is any difference in meaning between the words "at auction" and the words "at public auction." Whatever difference, if any, there may be, it may be assumed for the purposes of this appeal that, as contended for the defendant, it is a *public* auction which is contemplated by the statute and the question, then, is whether on the evidence the defendant conducted a public auction.

The evidence consisted merely of an agreed statement of facts, that statement being as follows:

"That the Hawaiian Fisheries, Limited, is a domestic corporation, organized under the laws of Hawaii, and doing business at Honolulu.

"That said corporation handles and sells for a large number of fishermen, on commission, fish caught by such fishermen, and does so daily, in the following manner:

"The catch, as soon as it comes in by boat is loaded into wagons and carried to the Fish Market, in Honolulu, and there an agent of said Hawaiian Fisheries, offers it in basket lots, each basket containing about from 70 to 100 pounds, to the retail dealers of fish only, and the one bidding the highest price for same, there and then becomes the purchaser. That at such sales no bid is received except from such retail dealers, or the persons conducting fish tables on the said market. That fish is highly perishable and must be quickly disposed of after being brought to market, and that the above plan is followed to facilitate the sale of fish when brought to market. The said corporation, if it cannot sell the fish brought to market in the manner above indicated, then must, under contract with the fishermen who are its patrons, sell such fish at retail. That the defendant, was at the time and place stated in the complaint against him, as agent for the said corporation, selling and offering for sale, fish in basket lots, in the manner above indicated, and not otherwise. That there are about thirty-three proprietors of fish tables on said market, who with their assistants, buy fish from said corporation, in manner as above stated.

"Neither the defendant, nor the said Hawaiian Fisheries Company, Limited, has obtained a license as Auctioneer, in and for the City and County of Honolulu, for the fiscal year commencing July first, 1909, or any part of said year. That the said Hawaiian Fisheries Company, Limited, has obtained and been operating under a Merchandise Broker's license, and now has such license."

That the defendant conducted an *auction* sale is beyond doubt. It was a sale by competitive bids where the seller invited and excited competition and disposed of the property to the person who made the highest bid. The practice of conducting such sales "is said to have originated with the Romans who gave it the descriptive name of *auctio*, an increase, because the offered property was sold to him who would offer the most for it." *Crandall* v. *State*, 28 Oh. St. 479, 481. "The essential part is the selection of a purchaser from a number of bidders," says Bouvier after defining an auction as being "a public sale of property to the highest bidder." Whether the sale be "by the inch of candle" or at Dutch auction or in the method ordinarily pursued at the present time, competition is a necessary element (*Crandall* v. *State*, supra, 482) and it is that which distinguishes a sale at auction from other sales where the attempt to sell and to agree on a price is made with but one prospective purchaser at a time.

Does the fact that bids were accepted from retail dealers of fish, and from no others, place the transactions without the class of sales at public auction within the meaning of the statute? We think not. In the word "auction" itself there is nothing to lead to the opposite conclusion. In so far as the word "public" imports publicity, a sale free from concealment, open to the knowledge or view of all, as opposed to one in private or unknown to the community at large, that element clearly existed in the transactions under consideration. There was no attempt at concealment or secrecy. Aside from this element the word "public" is susceptible of various shades of meaning.

It may be so used as to have reference to all of the members of a community, state or nation, or as referring to the community in general or a considerable portion of it. It is in the latter sense, we think, that it is used in the statute in question. The sale was none the less public because of the exclusion from bidding of the class which was excluded. The sale was of lots of fish varying from 70 to 100 pounds each. The class admitted to bid, the retail dealers of fish, included practically all who would be likely to offer bids. The main purpose of auction sales is to obtain the best financial returns for the owners of the property sold. Some measure of discretion is vested in auctioneers as to the precise methods to be pursued in attaining that object, for example, bids need not be accepted from minors or from persons irresponsible either financially or mentally or from drunken persons or from one offering in bad faith or even from one making but a slight raise in his bid over the bid last announced. See *Taylor* v. *Harnett,* 55 N. Y. Suppl. 988, 990, 991.

It may well be conceived that an auctioneer may in good faith and in the exercise of a proper discretion deem it to be to the best interests of his principals, in a series of sales such as described in the agreed statement, to refuse to sell to the consumers who in rare instances might possibly appear and bid to the financial detriment of the retail dealers who in large numbers, and regularly, attend such sales and purchase the great bulk of the fish. If the construction contended for by the defendant is correct an auction sale of miso and soyo, Japanese sauces, excluding all but Japanese, a sale of books excluding all illiterates, a sale of carriage lamps excluding all who have no carriages, a sale of automobile parts excluding all who do not own or operate automobiles, and a sale of fat steers in lots of twenty-five to ranchers and butchers only, would not be sales at public auction. It seems incredible that such was the intention of the legislature. The statute should be given a

reasonable construction, not permitting of easy evasions with no practical lessening of financial results to the auctioneer.

As to the question of unconstitutionality, it is well settled in this jurisdiction that "the legislature in a matter of this kind may classify or discriminate if the classification or discrimination is based on some reasonable ground which is furnished by population in some instances." *Trust Company* v. *Treasurer,* 19 Haw. 262, 263. See also *Territory* v. *Pottie,* Ib. 99, 104. "Where natural distinctions require discrimination not to discriminate works injustice." *Robertson* v. *Pratt,* 13 Haw. 600. "Absolute equality is of course unattainable; a mere approximate equality is all that can reasonably be expected." Ib. 602. In *Trust Company* v. *Treasurer,* supra, referring to a contention that a statute was unconstitutional which required a license fee of $750 for a banking business in Honolulu, of $500 for Hilo and of $250 for all other parts of the Territory, said: "There is a natural distinction between the different places in this Territory where banking may be carried on. This, of course, allows the legislature to reasonably and fairly classify the amount of the license fee required for banking. Even if the judgment exercised by the legislature in a matter of this kind is in our opinion unwise or perhaps oppressive, still that is not of itself sufficient to declare that a statute passed pursuant to such judgment violates the equal protection provisions of the constitution." The same may be said with reference to the business of auctioneering. The same distinctions exist. The great bulk of the business of the Territory is done in Honolulu. It is not for us to say whether we would make the difference in the amount of license fees in this case as large as the legislature has made it. It is sufficient that we cannot say that the difference is unreasonable or that the statute is unequal or arbitrary in its operation. Our conclusion is that as far as this objection is concerned the statute is valid.

The judgment appealed from is affirmed.

*F. W. Milverton, Deputy City and County Attorney (J. W. Cathcart City and County Attorney* with him on the brief) for plaintiff.

*R. P. Quarles (A. L. C. Atkinson* with him on the brief) for defendant.

### DISSENTING OPINION OF WILDER, J.

It appears from the agreed facts that defendant as an agent of the Hawaiian Fisheries Co., Ltd., a domestic corporation engaged in handling and selling on commission for a large number of fishermen fish caught by such fishermen, offered for sale fish in basket lots, each basket containing from seventy to one hundred pounds, to the highest bidder among thirty-three retail dealers of fish or owners of fish tables at the fish market, no bids being received from any other persons. It is well settled that the highest bona fide bidder of those who care to bid at an auction sale is entitled to receive the goods offered for sale. As stated in Bouvier's law dictionary, "A public sale is one made at auction to the highest bidder," and that "an auction is a public sale of property to the highest bidder." In this case it appears that the bidding was limited to about thirty-three persons and that bids from other persons, even if higher than any made by any one of the thirty-three, would not have been received or accepted. It follows, therefore, that this was not a sale to the highest bidder from among those who might choose to bid and consequently there was no sale at auction for which a license is necessary under the statute. The statement in Black's law dictionary applies, namely, that "if there can be such a thing as a private auction it must be one when the property is sold to the highest bidder but only certain persons or a certain class of persons are permitted to be present or to offer bids." The point to determine is not what the legislature actually intended but what its intention was as disclosed by the statute.

The argument made on behalf of plaintiff that the conten-

tion of defendant if upheld would only invite evasions of the
law as, for instance, an auction sale where bids are received from
all persons except hackmen, is without merit, as it does not
necessarily follow that in case of the instance cited, which
would be simply a scheme to evade the law, the same result
would be reached. In this case, notwithstanding the intima-
tion of the majority to the contrary, there is nothing to·sug-
gest, and the agreed facts do not permit the inference, that the
method pursued in selling the fish was devised simply to evade
the statute relating to the licensing of auctioneers, as it appears
that defendant's principal is at present operating under a mer-
chandise broker's license.

For the foregoing reasons I therefore dissent from the major-
ity.