HERBERT MILLER et al., Appellees, v. MONONA COUNTY et al., Appellants.

No. 45348.

OCTOBER 15, 1940.

REHEARING DENIED APRIL 11, 1941.

Hughes, O'Brien & Hughes and Underhill & Underhill, for appellees.

Prichard & Prichard, Geo. E. Allen, and John L. Gillespie, for appellants.

SAGER, J.—For convenience, the Haitz district will be referred to as if it were the only defendant, the others not having appealed.

Following an unsuccessful attempt to establish a drainage district in the same territory, Haitz district was completed in 1915. The proceedings by which this was accomplished were not challenged then and are not now. To aid in an understanding of the general plan of the project, we attach a plat of the district. It will be observed that the main ditch runs in a generally north and south direction. The engineer's plan provided for the construction of laterals extending westward with their outlets in the main ditch. Laterals were constructed every mile with the waste bank on the south side. There being no openings in these banks, the effect, as was the purpose of the plan, was that the surface water on each mile was to be taken care of by the lateral south of it. We are concerned here only with lateral No. 8. As originally planned and constructed there were no openings in its waste bank. It extended westward to the point indicated on the plat. In proceedings had in 1930 this was extended to the West Fork ditch, the extension being that part appearing in the plat as "Private Dyke". This designation "Private" was an error but not important here.

The system worked satisfactorily for many years. But there came the dry seasons of 1934, 1935 and 1936 during which dust storms and vegetation filled up the main ditch to an extent which reduced its capacity 50 percent or more. The laterals suffered likewise, their outlets were buried and their usefulness substantially destroyed. When the system had reached this state of deterioration, a strange reversal of climatic conditions brought unprecedented floods in 1936, 1937 and 1938. A graphic description of the 1936 flood is given by one of the defendants:

"In 1936, in March, we had more water to my idea than we ever had on the bottom before at one time. Supervisor Olson called me up and wanted to know if I would take my motor boat and take him around and look at these ditches * * * We started in a boat from our home 3 miles east and a half mile north of Whiting. That country was all under water. We went over to the West Fork ditch, drug the boat across the bridge. The whole country was water both sides of the Whiting road, just like an ocean. * * * The water had gone over the bank of the Haitz ditch, going back in the ditch over the waste bank of the Haitz ditch. It was going in awful swift. I got in without upsetting. * * * This water that was going in the Haitz ditch was going north up the Haitz ditch, so we went with the current, which should have been going the other way.* * * there was practically four and a quarter miles in width of the water that this flood extended along the Whiting road."

The extent of this and other floods is not material to a decision and this description is put in only to give some idea of the conditions to which landowners in that territory were subjected. The floods of other years were not so bad but were such as to destroy substantially all crops between laterals Nos. 5 and 8. Appellees were familiar with the surroundings but made no complaint, and took no action until September 1937. They then made a request that the board of supervisors investigate the situation and asked that a time be set at which they might be heard. No action was taken on this and in December of the same year, the petition herein was filed.

In 1930, on the application of interested property owners and after investigation and favorable recommendation by an engi-

neer, lateral No. 8 was extended to the West Fork ditch as has already been stated. Appellees urge that its construction contributed materially to their damage. Whether this is the fact is a matter of speculation, but whether so or not, it is not determinative of the question before us. The plans under which this drainage system was constructed made no provision for the two 50-foot openings ordered in the decree appealed from. This part of the decree cannot be sustained. The rest we do not comment upon because not appealed from.

It seems to have been overlooked that drainage districts, under the statutes, have characteristics all their own and powers not granted to cities and towns nor possessed by private individuals. The nature of these drainage districts makes inapplicable many of the citations upon which appellees rely. Thus these sections are cited: 12395, Code 1935 (defining what constitutes a nuisance); 12396 (3), Code 1935 (having reference to obstructing passage on navigable waters); and 7581, Code 1935 (prohibiting the obstruction of the flow of waters to the drainage ditch). So, too, it is argued that the creation and maintenance of a nuisance is clearly not a governmental function. Frances and L. F. Fitzgerald v. Town of Sharon, 143 Iowa 730, 121 N. W. 523; Harris v. City of Des Moines, 202 Iowa 53, 209 N. W. 454, 46 A. L. R. 1429. Appellees likewise cite cases defining the duty of the owner of the servient estate with reference to surface and overflow waters. Other citations appear but they are not relevant to the case before us. The drainage district is a special creation of the legislature and it requires no argument to sustain the proposition that it cannot create a nuisance while operating within the ambit of powers constitutionally delegated. No constitutional question is here involved.

This drainage system was constructed under statutes which definitely set the metes and bounds of its power and fixed the procedure which should control its exercise. It is argued that the extension of lateral No. 8 was not warranted and that the cost of it as a repair is in excess of 10 percent. This may be admitted without helping appellees. The question before us is whether there can be found in the statutes authority (save by appeal) for altering the structure of a drainage district by the district court. We do not find it. This district was organized under

powers conferred in section 1989-a1, 1913 Supplement. This statute appeared in substantially the same language as in section 7421, Code 1927. Appeal was the only remedy then as it has been ever since. See the following sections of the Code of 1927: 7513, 7527 and 7556; and the same sections in later codes. If the power of the district court to change lateral No. 8 be admitted, the whole of Haitz drainage district No. 17 could be altered out of all semblance to the original plan. What has been said makes it unnecessary to consider the argument of the parties with reference to laches, statute of limitation and other contentions made.

It follows that the decree of the district court, so far as it relates to the openings in lateral No. 8, is without warrant of law and it is to that extent reversed.—Reversed.

RICHARDS, C. J., and HAMILTON, STIGER, BLISS, HALE, and OLIVER, JJ., concur.