HAWAII JEWELERS ASSOCIATION, an unincorporated trade association *v.* FINE ARTS GALLERY, INC., an Arizona corporation, and STANTON M. BIER.

No. 4856.

JANUARY 23, 1970.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ., AND CIRCUIT JUDGE M. DOI IN PLACE OF KOBAYASHI, J., DISQUALIFIED.

OPINION OF THE COURT BY ABE, J.

The defendant, Fine Arts Gallery, Inc., commenced business on July 5, 1968, at 2270 Kalakaua Avenue, in

Waikiki, Honolulu, Hawaii, advertising its business as "auction."[1] It also gave notice of "auction" to the public by bulkmail. At the premises there were several signs reading "auction."

The plaintiff, Hawaii Jewelers Association, an unincorporated trade association, brought this action against the defendant corporation and Stanton M. Bier, as principal stockholder and "auctioneer," pursuant to HRS §445-32 to enjoin the operation by the defendants of a public auction without having first obtained a license as required by HRS § 445-7; without designating a public auction room as required by HRS § 445-29; and without obtaining a bond as required by HRS § 445-31.

The defendants contended in the trial court that the following statement or notice "OUR GOLDEN RULE 30 day money back guarantee on every sale" appearing in newspaper advertisements and on the inside back cover of the catalogue gave a buyer a right to return any article for any or no reason within 30 days and to a refund of the purchase price. Therefore, they argue that though the sale was conducted by competitive bidding, they were not conducting an auction.

The trial court on July 15, 1968, after a hearing, held that though defendants were not conducting an auction within the meaning of HRS §§ 445-21 to 38, they were conducting a "mock auction" and issued a preliminary injunction.

Subsequently, after a hearing on October 25, 1968, the preliminary injunction was made permanent and the final order was entered on November 6, 1968. Defendants appealed.

---

[1] Advertisements in the newspapers announced "public auction Friday, July 5 through Monday, July 8 from 8 p.m., afternoon sales Saturday and Sunday from 1 p.m., THE FABULOUS ART TREASURES FROM THE ESTATE OF THE LATE MISS MARION DAVIES."

This court in *Territory* v. *Toyota,* 19 Haw. 651, 653 (1909), defined auction as follows:

". . . a sale by competitive bids where the seller invited and excited competition and disposed of the property to the person who made the highest bid. The practice of conducting such sales 'is said to have originated with the Romans who gave it the descriptive name of *auctio,* an increase, because the offered property was sold to him who would offer the most for it.' *Crandall* v. *State,* 28 Oh. St. 479, 481. 'The essential part is the selection of a purchaser from a number of bidders,' says Bouvier after defining an auction as being 'a public sale of property to the highest bidder.' "

The defendants' contention is that the "thirty day money back guarantee" postpones the transfer to purchasers of title to articles and therefore the operation was not an auction within the provisions of the Uniform Commercial Code, HRS § 490:2-328. The pertinent portion of the provision reads as follows:

*"Sale by auction.* (1) In a sale by auction if goods are put up in lots each lot is the subject of a separate sale.

(2) A sale by auction is complete when the auctioneer so announces by the fall of the hammer or in other customary manner. . . ."

The section defines sale by auction, but we believe that it does not mean that one cannot enter into a sales contract or an agreement of sale by way of an auction; or that where all other incidents of an "auction" are present, the transaction is not an auction if title to the chattel is not transferred upon the fall of the hammer.

There are cases holding that upon the acceptance of a bid by a fall of the hammer at an auction, one has contractual rights which may be enforced, but title to a chattel auctioned is not transferred to a successful bidder.

The relationship between a vendor and a vendee, upon the acceptance of the vendee's bid at an auction, is the same as between a promissor and a promissee of an executory contract of sale conventionally entered into. *Collins* v. *Desmarest,* 45 La. Ann. 108, 12 So. 121 (1892) ; *Richardson* v. *Landreth* (Mo. App.) 260 S.W. 128 (1924) ; *State* v. *Clinger,* 72 Idaho 222, 238 P.2d 1145 (1955) ; *In Re Herbert's Estate,* 356 Pa. 107, 51 A.2d 753 (1947).

However, for the determination of this action it is not necessary for this court to decide that point because here we hold that upon the fall of the hammer, title to a chattel auctioned was transferred to a successful bidder. We believe that defendants and successful bidders intended that title would pass upon the fall of the hammer and that purchasers could do as they pleased with the goods purchased—give or sell them to third parties. The "thirty day money back guarantee" was either an option given a successful bidder to return the goods and get a refund of money paid within 30 days or a continuing offer of defendants to repurchase the goods for a period of 30 days from the date of sale. It was similar to a satisfaction or money back guarantee given purchasers under a "sale or return" contract which gives the buyer an option or right to return the goods. *See Sommer Metalcraft Corp.* v. *Indianapolis Mach. Co.,* 132 Ind. App. 651, 179 N.E.2d 769 (1962) ; *Concordia Fire Ins. Co.* v. *McCarty Motor Co.,* 45 S.W.2d 446 (Tex. 1932).

As we have stated the "thirty day money back guarantee" did not prevent or postpone the transfer of the title to chattels upon the fall of the hammer and we hold that defendants were conducting a public auction within the meaning of HRS §§ 445-21 to 38, but without meeting the requirements of HRS §§ 445-7, 445-29, and 445-31. Therefore, the trial court properly issued a permanent in-

junction under the provisions of HRS § 445-32 to enjoin defendants from conducting an auction.

Having reached this conclusion, we find it unnecessary to answer the questions presented on this appeal: (1) Is there a business which may be termed "mock auction"? (2) If so, should such business be prohibited rather than regulated? (3) Is the term "mock auction" as used in the statute vague, indefinite and incapable of definition and therefore in violation of the Fourth, Fifth and Fourteenth amendments of the Constitution of the United States?

Defendants also argue that because the Director of Finance of the City and County of Honolulu determined that it was not necessary for the defendant corporation to apply for and receive a license to conduct an auction under its then contemplated method of selling, the defendants had the right to rely upon the administrative opinion. We do not agree. The opinion of the Director of Finance is in no way binding upon this court.

Further, the permanent injunction issued by the trial court only enjoins the method used by defendant corporation of selling articles by competitive bids without having met the requirements of the law. Defendants are in no way stopped or prevented from applying for a license to conduct an auction and from conducting an auction upon meeting the other requirements of the provisions of HRS §§ 445-21 to 31.

Affirmed.

*Sidney I. Hashimoto* (*Chee, Hashimoto, Lee & Oshiro* of counsel) (*Donald Maxwell, Maxwell, Johnson & Wahl* of counsel, and *Charles C. Bernstein* with him on the brief) for defendants-appellants.

*J. Russell Cades* and *Thomas P. Huber* (*Cades, Shutte, Fleming & Wright* of counsel) for plaintiff-appellee.