**Wayne E. REED, Appellee,**

v.

**MUSCATINE—LOUISA DRAINAGE DISTRICT # 13, Trustees of Muscatine—Louisa Drainage District # 13, and Kenneth R. Grimm, Defendants, and Clarence Keltner and Job Keltner, Jr., Appellants.**

**No. 59693.**

Supreme Court of Iowa.

March 22, 1978.

Hicklin & Matthews, Wapello, for appellants.

Lewis & Stevens, Muscatine, for appellee.

Considered by MOORE, C. J., and Le-GRAND, REES, UHLENHOPP and McCORMICK, JJ.

LeGRAND, Justice.

This appeal challenges a decree setting aside as void a sale of real estate by Muscatine—Louisa Drainage District # 13 to Kenneth Grimm, Clarence Keltner, and Job Keltner, Jr. Grimm did not appeal, and we refer to the appellants jointly as Keltner. We affirm the trial court.

We set out the facts upon which this controversy depends. Muscatine—Louisa Drainage District # 13, hereafter called the District, is an inter-county drainage district created under Chapters 455 and 457, The Code. At all times material to this controversy, it was governed by three trustees, Don McNeal, Robert Cook, and Alvin Lohse, as permitted by Chapter 462, The Code.

On July 12, 1975, the District determined to sell a one-hundred-forty-seven acre farm which it owned and which is located in Louisa County. It published notice of its intention in papers of general circulation in both Louisa County and Muscatine County. The notices directed that sealed bids be submitted prior to August 28, 1975, at 1:15 p. m. Each bid was to be accompanied by a check for $8,000.00. All bidders were requested to be present at the bid opening. The notice directed those interested to contact the trustees or their attorney, Russell R. Newell, for further information. Under the terms of the sale the trustees reserved the right to reject any and all bids.

Plaintiff's bid of $133,100.00 was the highest one submitted. The next highest bid was $75,000.00. All bids were rejected, and the trustees then conducted an auction limited to those persons who had submitted written bids and who were present at the bid opening. It was at this auction that the Keltner offer in the sum of $143,000.00 was made and accepted.

Plaintiff was not present at the bid opening and therefore was not among those who participated in the auction. He explained his absence by stating he had called the attorney for the District, as the notice of sale had directed, asking if it was necessary that he be present when the bids were opened. He was told it was not, and ac-

cordingly, he submitted his written bid, but did not attend the opening.

This suit was started to prevent completion of the sale to Keltner. Plaintiff asked two forms of relief. First, he sought to have the sale to Keltner declared void and, second, he requested a writ of mandamus to compel sale of the farm to him. Mandamus was denied, and plaintiff did not appeal from that denial. We therefore give that matter no consideration here.

After the original construction of a drainage district has been completed and paid for, the statute permits it to be placed under the control and management of three trustees. See §§ 462.1, 462.4, The Code; *State ex rel. Iowa Employment Security Comm'n v. Des Moines County*, 260 Iowa 341, 343, 149 N.W.2d 288, 290 (1967). Otherwise the board of supervisors exercises management and control over the district. *Voogd v. Joint Drainage Dist. No. 3–11*, 188 N.W.2d 387, 391 (Iowa 1971); § 455.135(1), The Code.

§ 462.27, The Code, provides as follows: "Trustees shall have control, supervision, and management of the district for which they are elected and shall be clothed with all the powers now conferred on the board or boards of supervisors for the control, management, and supervision of drainage and levee districts under the laws of the state * * *."

As in statutes dealing generally with the conduct of county affairs, Chapter 455 recognizes two classes of real estate. The first is real estate acquired by tax deed; the second includes real estate (and other property) "no longer needed for the purposes for which the district was established." See §§ 455.171 and 455.176. We deal here with real estate no longer needed by the district.

The statutory authority for the sale of such real estate is contained in § 455.171. It grants the power, but sets out no procedure. Defendants insist this grants unqualified authority to sell on whatever terms the trustees deem best. The trial court did not agree, nor do we.

We set out the pertinent part of § 455.-171:

"If no redemption shall be made [from the tax sale], the board of supervisors or trustees, as the case may be, shall receive ·the tax deed as trustees for the district. * * * *The board of trustees may also lease or sell and convey such other property of the district, both real and personal, as is no longer needed for the purposes for which the district was established,* and any such leases, sales and conveyances prior to July 4, 1963, are hereby legalized and declared to be valid and binding. (Emphasis added)

This statutory authority to sell was added to § 455.171 by amendment in 1963. The amendment was clearly intended to accomplish two purposes. It was, first, a legalizing act as to those conveyances made by the trustees prior to 1963; and it served, too, as specific authority for future sales by the trustees.

It is notable that the amendment granted such authority only to *trustees.* Supervisors are not mentioned. Defendants make much of this, insisting it demonstrates a legislative intent to confer on trustees a greater power than the supervisors enjoy.

Our reading of § 455.171 and related statutes leads us to a different conclusion. We are not persuaded that the legislature intended to grant greater authority to the trustees than to the body (the supervisors) in whose place they act. We believe, rather, the amendment omitted any mention of the supervisors because they already had such power under § 332.3(13). Although it might well be argued the trustees would likewise have such power under § 462.27, the legislature apparently deemed it advisable to confer specific power of sale on them.

Acting on this premise, we look to the authority of the board of supervisors to sell land other than that acquired by tax deed. § 332.3(13) provides as follows:

"When any real estate, buildings, or other property are no longer needed for the purposes for which the same were acquired by the county, to convert the same to other county purposes or to sell or lease the same. *Real property sold under*

this section shall be sold at public auction and not by use of sealed bids, but only after notice has been published once in a newspaper of general circulation in the county in which the property is located, stating the description of the property to be sold and the date, time, and place of the sale. The notice shall be published not less than fifteen days nor more than twenty-five days prior to the date of the sale. If after being offered once at public auction, such property is not sold, the board of supervisors may dispose of the property by selling it to a person or persons submitting sealed bids to the board. Sale by bids may only be effected thirty days after public notice of the proposed sale of such property." (Emphasis added)

 We do not overlook the fact that drainage districts are established for specific limited purposes and have been held to possess particular characteristics of their own. *See Miller v. Monona County*, 229 Iowa 165, 169, 294 N.W. 308, 310 (1940). However, they are also political subdivisions of the county. *Voogd v. Joint Drainage Dist. No. 3–11*, 188 N.W.2d at 393; *State ex rel. Iowa Employment Security Comm'n v. Des Moines County*, 260 Iowa at 346, 149 N.W.2d at 291. They have only such power as the legislature grants them, and we do not believe the authority of the trustees is greater than that of the supervisors. We hold the legislature intended the sale of real estate under § 455.171 should be accomplished according to the provisions of § 332.3(13), whether by supervisors or by trustees.

The statute (§ 332.3(13)) requires a sale at public auction after notice. Although what was done by the trustees here is called an auction and although we have used that designation in this opinion, it was not an auction at all. An auction is a sale of property "where any and all persons who choose are permitted to attend and offer bids." Black's Law Dictionary 166 (Rev. 4th Ed. 1968). The same authority tells us the term "imports a sale to the highest and best bidder with absolute freedom for competitive bidding." *See also Adair v. Ala-*

bama Real Estate Commission, 53 Ala.App. 621, 303 So.2d 119, 122 (1974); *Hawaii Jewelers Ass'n v. Fine Arts Gallery, Inc.*, 51 Haw. 502, 463 P.2d 914, 915–16 (1970); 7 C.J.S. *Auctions and Auctioneers* § 1, p. 1239 (1937).

The procedure followed here was an attempt to hold a "private" auction—a contradiction in terms—for a limited group of selected buyers without notice. It was contrary to the statutory provisions of § 332.-3(13), which direct the sale to be made at public auction. Under our prior rulings, such a purported sale is void. *Voogd v. Joint Drainage District No. 3–11*, 188 N.W.2d at 393; *Madrid Lumber Co. v. Boone County*, 255 Iowa 380, 383–387, 121 N.W.2d 523, 525–527 (1963). We affirm the judgment of trial court.

AFFIRMED.