William J. GANNON and Kathleen K. Gannon, Harley H. Steenhoek, Phyllis Steenhoek, and Ronald G. Beard, Plaintiffs–Appellees,

v.

Brian D. RUMBAUGH and Carol J. Rumbaugh, Defendants–Appellants.

No. 07–0889.

Court of Appeals of Iowa.

July 2, 2009.

Terry Rickers of Matthias, Campbell, Tyler, Nuzum & Rickers, Newton, for appellants.

R. Bradley Skinner of Skinner Law Office, P.C., Altoona, for appellees.

Considered by SACKETT, C.J., and POTTERFIELD and MANSFIELD, JJ.

SACKETT, C.J.

Defendant-appellants, owners of farmland, modified a levee or levees on their property and constructed a dam or put fill in an adjoining road ditch. Plaintiffs-appellees, two neighboring land owners and the farm tenant of one, sued on several theories seeking relief, contending the removal of the levees and the fill or dam in a road ditch caused their property to flood. The district court found in plaintiffs' favor and this appeal follows. We vacate in part, affirm in part, reverse in part, and remand.

■■■ SCOPE OF REVIEW. The case was tried at law. In a law action we review for the correction of errors at law and the district court's findings of fact has the effect of a special verdict. Iowa R.App. P. 6.4. The defendants contend that we should not give the customary deference to the district court's findings because the district court adopted verbatim the plaintiffs' proposed findings, which they contend were contrary to the evidence at trial. Plaintiffs contend this does not change our standard of review. Our ability to apply the usual deferential standard to the district court is undermined by the court's verbatim adoption of plaintiffs' proposed factual findings and legal conclusions on this point. *Rubes v. Mega Life & Health Ins. Co., Inc.*, 642 N.W.2d 263, 266 (Iowa 2002). The customary deference accorded trial courts cannot fairly be applied when the decision on review reflects the findings of the prevailing litigant rather than the court's own scrutiny of the evidence and articulation of controlling legal principles. *See Id.*; *see also Kroblin v. RDR Motels, Inc.*, 347 N.W.2d 430, 435 (Iowa 1984); *Phoenix Eng'g & Supply Inc. v. Universal Elec. Co.*, 104 F.3d 1137, 1140 (9th Cir.1997). A close scrutiny of record is required where the trial court adopts one party's proposed findings. *In re Las Colinas, Inc.*, 426 F.2d 1005, 1009, 1010 (1st Cir.1970). It appears here that the district court adopted verbatim the plaintiffs' proposed findings and rulings. Con-

sequently we closely scrutinize the record to see if the evidence supports these findings.

**BACKGROUND AND PROCEEDINGS.** The defendants-appellants, Brian and Carol Rumbaugh, and plaintiffs-appellees, William J. and Kathleen L. Gannon and Harley H. and Phyllis Steenhoek, owned adjoining farmland in Jasper County, Iowa. Plaintiff-appellee, Ronald G. Beard, is a farm tenant on some of the Gannons' land. Flooding occurred on the Gannon and Steenhoek land after heavy rains, and plaintiffs sued defendants seeking damages and injunctive relief, contending the flooding was the result of the defendants' actions.

The parties' farmland is between Clear Creek and Indian Creek. The Gannon farmland adjoins the defendants' farmland on the south. The Steenhoeks' farmland adjoins defendants' on the north across a county road. Defendants' land is higher than Gannons'; consequently, defendants' land as to Gannons' is the dominant estate and Gannons' as to defendants' is the servient estate. Steenhoeks' land is higher than defendants; consequently, as to defendants, Steenhoeks' land is the dominant estate and defendants' is the servient estate.

Apparently in the early 1900s, a drainage or levee district was established and the drainage district built a system of levees on various tracts of farmland, intending to prevent floodwater from the two creeks from flooding adjoining farmland. The parcels in question apparently were included in that drainage district, which is not currently of record and has made no assessments for some seventy years.[1] There was no evidence that any of the parties subsequently sought to reestablish the drainage or levee district.

In 2002, defendants lowered the levee on their property and constructed a dam or put fill in a road ditch. In 2004 and 2005 portions of plaintiffs' fields flooded after heavy rains and had to be replanted. Plaintiffs sued defendants, alleging nuisance, negligence, trespass, and violation of Iowa Code section 468.148 (2005). They sought money damages and injunctive relief.

The district court found that (1) defendants had created a nuisance, (2) defendants were negligent, (3) defendants removed drainage improvements that were authorized by law, and (4) plaintiffs were entitled to injunctive relief. The trespass claim was denied. The district court then ordered judgment for the creation of a nuisance and negligence in favor of Gannons for $2913.75, in favor Steenhoeks for $8948.91, and. in favor of Beard for $3901.35. The district court further ordered judgment for violation of Iowa Code section 468.148 in favor of Gannons, awarding them additional damages of $2913.75, and in favor of Steenhoeks, awarding them additional damages of $4238.07. The court also entered an injunction enjoining defendants forever from removing any further portion of the levee on their property and ordering them by the end of 2007 to take all steps necessary to repair and construct a levee identical to that removed in 2002 and to remove any obstruction to the ditch and culvert system. Costs were assessed to defendants.

Defendants challenge here the district court's (1) failure to dismiss the nuisance claim, (2) findings of negligence, (3) finding they violated section 468.148, and (4) entry of an injunction to enjoin a nuisance. We vacate in part, affirm in part, reverse in part, and remand.

---

1. There is a suggestion the district was dissolved because it ran out of money.

■ **NUISANCE.** The district court found that the actions of the defendants created an ongoing private nuisance that unreasonably interfered with the comfortable enjoyment of life or property of the Gannons, Steenhoeks, and Beard. The defendants contend the district court did not have subject matter jurisdiction to consider the nuisance claims and its decision is not supported by the evidence. Defendants claim that for the district court to have had jurisdiction, the plaintiffs must first seek mediation of the "dispute," which they did not do. They claim this is a "jurisdictional prerequisite" to filing suit in district court. Iowa Code § 654B.3.

The plaintiffs respond that chapter 654B deals with animal care and feeding contracts and related nuisances. *See id.* § 654B.1; *Klinge v. Bentien,* 725 N.W.2d 13, 16–17 (Iowa 2006). The plaintiffs argue chapter 654B applies only to disputes involving care and feeding contracts for livestock. *See Klinge,* 725 N.W.2d at 16–17. We believe they misunderstand *Klinge.* The parties in *Klinge* had entered into a care and feeding contract for livestock. *Id.* at 17. The supreme court determined the mandatory mediation provisions of chapter 654B applied. *Id.* The court, however, did not hold that chapter 654B applied *only* to disputes over care and feeding contracts.

The clear language of the statute provides:

A person who is a farm resident, or other party, desiring to initiate a civil proceeding to resolve a dispute, shall file a request for mediation with the farm mediation service. The person shall not begin the proceeding until the person receives a mediation release....

Iowa Code § 654B.3(1)(a). "The requirements of paragraph 'a' are *jurisdictional prerequisites* to a person filing a civil action that initiates a civil proceeding to resolve a dispute subject to this chapter." *Id.* § 654B.3(1)(b) (emphasis added). The chapter defines the disputes subject to this chapter as either "[t]he performance of either person under a care and feeding contract, if both persons are parties to the contract" or "[a]n action of one person which is alleged to be a *nuisance* interfering with the enjoyment of the other person." *Id.* § 654B.1(2) (emphasis added). In enacting the provisions of chapter 654B and other provisions related to the farm mediation service, the legislature made certain findings and a declaration:

The general assembly also finds that the independence and isolation of farm residents poses special obstacles in dispute resolution. Legal proceedings may be a costly, time-consuming, and inefficient means of settling disputes in which a farm resident is a party. Disputes may be better resolved in an informal setting where understanding and accommodation may replace a formal and adversarial proceeding. Therefore the general assembly declares that farm mediation should be expanded to include more disputes between farm residents and opposing parties.

1990 Iowa Acts ch. 1143, § 1. We conclude chapter 654B applies to the nuisance claims raised by the plaintiffs. *See* Iowa Code § 654B.1(7) (defining "nuisance" to include nuisances defined in section 657.2(1)-(5), (7)). Because the plaintiffs did not obtain either a mediation release or a court determination that the time delay required for mediation would cause irreparable harm, the jurisdictional prerequisites to filing this civil action for nuisance were not met. *Id.* § 654B.3(1). We conclude the district court was without jurisdiction to consider the plaintiffs' nuisance claims. We vacate that portion of the district court's decision finding that the defendants created a nuisance.

**NEGLIGENCE CLAIMS.** The district court found defendants were negligent in filling or constructing a dam in the road ditch and in removing the levee, and that this negligence resulted in damage to all the plaintiffs.

 Negligence is a fault, and it is the plaintiff's burden to prove fault by a preponderance of the evidence. *Fanelli v. Illinois Cent. R.R.,* 246 Iowa 661, 664, 69 N.W.2d 13, 15 (1955). It is not to be assumed from the mere fact of an injury. *Id.* It is not enough that there is a mere possibility the injury is chargeable to the negligence of defendant, and a recovery may not rest wholly on conjecture. *George v. Iowa & S.W.R. Co.,* 183 Iowa 994, 998, 168 N.W. 322, 323 (1918).

 All plaintiffs claim the defendants acted in such a way as to damage their property rights. Gannons and Beard claim this was done by increasing the flow on their property of surface water that came from excessive rain fall. Steenhoeks claim it was by allowing the excessive rainfall to remain on their property for a longer period than it would have remained had defendants not taken the actions they did. The claimed damages were done by surface water that came from excessive rainfall. Surface waters are waters on the surface of the ground of a casual or vagrant character, following no definite course, of a more or less temporary existence that spread at random over the ground and are lost to percolation in the soil and by evaporation, and are distinguished from water of creeks, streams, rivers, ponds, and lakes having a substantial existence and a substantially definite location. *Hunt v. Smith,* 238 Iowa 543, 555, 28 N.W.2d 213, 218–19 (1947). Surface water temporarily occupies land used

for other purposes. *Id.* at 556, 28 N.W.2d at 219. The right to divert or impede its flow is quite different from the right to divert or impede the flow of water in a channel. *Id.* Overflowed water is an outlaw, tending to interfere with the legitimate use of the land that it overflows. *Id.* If the surface water uniformly or habitually flows off over a given course having reasonable limits as to the width, the line of its flow is, within the meaning of the law applicable to the discharge of surface water, a watercourse.[2] *Id.* at 557, 28 N.W.2d at 220.

 **STEENHOEK NEGLIGENCE CLAIM FOR CHANGES TO THE ROAD DITCH.** The district court concluded changes in the road ditch next to defendants' property were "an obstruction to the free use of the property so as essentially to unreasonably interfere with the comfortable enjoyment of life or property of the Steenhoeks."

The Steenhoeks' property lies upstream from the defendants' property and the Gannons' property. Water drains from the Steenhoeks' property through culverts and the roadside drainage ditch on the north side of the defendants' property. In removing or lowering the levee on their property, the defendants raised the level of a portion of the road ditch. The district court concluded the defendants breached their duty of care to the Steenhoeks by preventing the water from draining naturally from the Steenhoeks' land, which is the dominant estate.

 Water from a dominant estate must be allowed to flow in its natural course onto a servient estate. *Moody v. Van Wechel,* 402 N.W.2d 752, 757 (Iowa

2. We are not dealing with a riparian owner against whom a claim is made for accelerating or hastening the flow of water in the stream to the injury of another as in *Oak Leaf Country Club, Inc. v. Wilson,* 257 N.W.2d 739, 745 (Iowa 1977).

1987). The flow may not be diverted by obstructions erected or caused by either estate holder. *Id.*

Exceptionally heavy rains flooded the area and left water pooling in fields. Mark Land, a graduate of Iowa State University in civil engineering working for the general civil engineering firm of Snyder & Associates in Ankeny, Iowa, testified as a witness for the plaintiffs. Land did not believe that the removal of the levee increased the flow of water to the Steenhoeks' property.[3] He was, however, of the opinion that additional grading done in conjunction with the defendants project created a slower removal of the water because the storm water was unable to follow its previous path along the roadside ditch. Substantial evidence supports the finding that defendants were negligent and decreased the flow from the Steenhoeks' property and Steenhoeks suffered damages as a result. We affirm the district court's finding that as to Steenhoeks, the defendants were negligent and the defendants' negligence was a cause of Steenhoeks' damage. We affirm the award to Steenhoeks in the amount of $8948.91 in damages.[4]

**NEGLIGENCE AS TO GANNON AND BEARD FOR MODIFYING THE LEVEES.** The Gannons' land is lower than the defendants' land. The owner of the dominant estate is entitled to all the natural advantages of the location and contour of his land. *Hunt,* 238 Iowa at 561, 28 N.W.2d at 221. The district court recognized that normally as the dominant estate, defendants have the right over the Gannon property the servient estate. The district court went on to find "if the water amount is substantially increased, if the manner or method drainage is substantially changed or at a different place *than the natural course of water,* then Rumbaugh has committed a negligent act under the doctrine." (Emphasis added.)

The water that entered Gannons' land was surface water that temporarily occupied land used for other purposes, namely farming. *Id.* at 556, 28 N.W.2d at 219. The right to divert or impede its flow is quite different from the right to divert or impede the flow of water in its channel. *Id.* The water was surface water and the watercourse over plaintiffs' lands prior to the removal of the levee was not a natural watercourse as the flow of the water, at least in part, was directed by the man-made levees.[5]

3. Land testified as follows:
 Q. Did you in regards to Mr. Steenboks' property come to an opinion as to whether or not the grading of the levee, the removal of the levee created additional storm water ponding onto his [Steenhoeks'] property? A. Yes because of the inability of the storm water flow to follow its previous path which was along the levee, the removal of the levee itself didn't increase the flow onto Mr. Steenhoek's property. However, as part of removal of the levee, there was additional grading done in the kind of the flow line, if you will, where the water had previously flowed, drained. And because that was cut off at the County ditch as part of that grading, that act was in my opinion what would have definitely caused additional flow, or additional ponding, excuse me to occur on Mr. Steenhoek's property.

4. Defendants have not challenged the computation of damages. We recognize that the damage award as computed by the district court was for nuisance and negligence. We do not modify it, as the entire award appears to be supported by either negligence or nuisance.

5. Under some circumstances an artificial ditch may become a natural watercourse by lapse of time between private individuals. *Grace Hodgson Trust v. McClannahan,* 569 N.W.2d 397, 399 (Iowa Ct.App.1997); *see also Franklin v. Sedore,* 450 N.W.2d 849, 852 (Iowa 1990); *Fennema v. Menninga,* 236 Iowa 543, 547, 19 N.W.2d 689, 691 (1945). However, the issue of a prescriptive easement was not addressed by the district court and we do not consider it on appeal.

The district court concluded that defendants had not exercised ordinary care in the use of their property in haphazardly eliminating the levee on their property and increasing the flow of water from their property to Gannons' and unreasonably interfered with the Gannons' comfortable enjoyment of life or property.

Defendants contend the removal of the levee allowed the water to flow in its natural state. They argue they have not done anything to increase the flow of natural drainage over and above what it would be if the levee had never been constructed. They contend that they had good reasons for removing the levee—that it was in need of maintenance and repair. They further argue that keeping the levee might make them liable for damages due to a failure of the levee or erosion or lack of maintenance. *See O'Tool v. Hathaway,* 461 N.W.2d 161, 164 (Iowa 1990).

Defendants also contend that plaintiffs have not shown them to be negligent, that they used due diligence in researching their legal standing pertaining to the former levee, and that there is no evidence the contractor who did the work was not competent.

The plaintiffs respond to defendants' arguments by stating:

The defendants failed to provide any evidence regarding what was the original and natural state of surface water flowage. They merely offered their opinion that the removal of the levee system resulted in having the water flow naturally.

Plaintiffs then argue that defendants' choosing to eliminate the levee caused surface water to cross Gannons' property and defendants were negligent because defendants' actions caused the flow of surface water to increase substantially. Despite making these factual arguments, the plaintiffs in this section of their brief have failed to make even one citation to the record where there is evidence that supports this opinion. *See* Iowa R.App. P. 6.14(1)(d) (requiring references to the record); *Hanson v. Harveys Casino Hotel,* 652 N.W.2d 841, 842 (Iowa Ct.App.2002) ("We are not bound to consider a party's position when the brief fails to comply with our rules of appellate procedure."). We reverse the finding of negligence in favor of Gannons and Beard.

■ **VIOLATION OF IOWA CODE SECTION 468.148.** The district court found that defendants, in removing the levee and modifying the ditch to change the Steenhoeks' drainage, violated Iowa Code Section 468.148, as the drainage ditch and the levee was authorized by law. The district court found they were originally authorized by law, the disbanding of the drainage district did not change that, and there is no evidence otherwise.

Iowa Code Section 468.148[6] makes any person who willfully breaks down or injures any levee or obstructs any ditch or drain "authorized by law" liable for double damages.

The district court reasoned there was evidence that when the levee system was constructed, it was authorized by law, and the district had authority to establish the levee system. The facts as to what specific action was taken when and if the district was established are nonexistent, but there does seem to be an agreement that a

---

6. Iowa Code Section 468.148 provides in applicable part that:

Any person who shall willfully break down or through or injure any levee . . . or who shall dam up, divert, obstruct, or willfully injure any ditch drain or other drainage improvement authorized by law shall be liable to the person or persons owning . . . the lands . . . in double the amount of damages sustained.

drainage district had something to do with the levees being built. The defendants argued that since the district was disbanded and there is no evidence of its current existence, the levee system was no longer authorized by law. The plaintiffs argued that since the original district was authorized by law, the levee system is still authorized by law and the disbanding of the district had no bearing on the levee system or its legality. The court found defendants "provided no evidence to indicate the levee system had not been authorized by law since that time [of abandonment]" and that there was no evidence indicating it was not still authorized by law.

The court then went on to find that, "the court has no evidence to indicate anything other than the levee systems are authorized by law," there was no evidence the defendants had authority to modify the ditch or culverts areas, and the Gannons and Steenhoeks were entitled to double damages. Plaintiff Beard, because he was not a property owner, was not entitled to double damages.

 A drainage district is established for a specific limited purpose and, consequently, possesses its own particular characteristics. *See Reed v. Muscatine Louisa Drainage District # 13*, 263 N.W.2d 548, 551 (Iowa 1978); *Miller v. Monona County*, 229 Iowa 165, 169, 294 N.W. 308, 310 (1940). Cases concerning the legal status of drainage districts have consistently noted the limited nature of their existence. *Gard v. Little Sioux Intercounty Drainage Dist.*, 521 N.W.2d 696, 698 (Iowa 1994). They have only those powers as the statutes provide. *Id.*; *see also Sedore v. Bd. of Trustees of Streeby Drainage Dist. No. 1*, 525 N.W.2d 432, 433 (Iowa Ct.App.1994).

Plaintiffs have introduced no evidence to show that the specific levee on defendants'

property was a specific limited purpose of a drainage district. Defendants' thirty-year abstract does not show an existing district. A letter introduced in evidence from attorney Lee M. Walker, who represented drainage districts in the county, said he informed defendants that he looked it up and found the "drainage ditch [sic] had been dissolved and that from the drainage district viewpoint there was no drainage ditch [sic] any longer" that had any "concerns or control over" what defendants did with their property. So even if we had found that Gannons should have damages, there would have been no basis to increase them under Iowa Code section 468.148. As to Steenhoeks' claim under that code section, there is no evidence that the ditch in question that defendants were found to have filled was a part of a drainage district. The plaintiffs have not met their burden of proof. We reverse any award of damages under this code section.

**INJUNCTION.** Defendants contend the district court erred in imposing injunctive relief. They contend the district court's findings as to a need for injunctive relief are not supported by the evidence and that it creates a hardship on defendants.

The injunction was given to abate a nuisance. We have determined that the district court had no jurisdiction to consider the nuisance claim and vacated the district court finding a nuisance was proved. There being no finding of a nuisance, there is no basis to grant injunctive relief to abate a nuisance. We vacate the injunction.

**SUMMARY.** We vacate that part of the district court's decision concerning nuisance and also vacate the injunction issued to abate the nuisance. We reverse that part of the decision awarding damages to

Gannons and Beard based on negligence. We reverse that part of the decision awarding damages for violation of Iowa Code section 468.148. We affirm the remainder of the district court's decision and remand for entry of judgment in conformity with this opinion.

**VACATED IN PART, AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**