FARLEY DRAINAGE DISTRICT No. 7 OF HAMILTON COUNTY et al., Appellees, v. BIG FOUR JOINT DRAINAGE DISTRICT et al., Appellants.

G. E. FARLEY, Appellee, v. BIG FOUR JOINT DRAINAGE DISTRICT et al., Appellants.

OCTOBER 24, 1928.

REHEARING DENIED MARCH 8, 1929.

*Lee, Steinberg & Walsh* and *Peisen & Soper*, for appellants.

*Burnstedt & Hemingway* and *E. H. Lundy*, for appellees.

KINDIG, J.—Involved in this controversy is a construction of the Iowa drainage statutes.

Appellant the Big Four Joint Drainage District was established as an inter-county improvement in 1909. It embraced territory in Franklin, Hamilton, Hardin, and Wright Counties. Two appeals were taken to the district court from the action of the Big Four in annexing new land through its joint boards. The one application for such review was by the appellees Farley Drainage District No. 7 of Hamilton County, Iowa, and the board of supervisors of Hamilton County, and the other by the appellee G. E. Farley, individually. These are consolidated here.

Adjacent to the "Big Four," but not included therein, were approximately twenty other drainage districts in those counties. They were "intra," as distinguished from "inter," institutions. Appellee the Farley Drainage District is an organization wholly within Hamilton County, and was formed prior to the "Big Four." All the waters therefrom flow through the "Big Four." Included within the Farley District, appellee, were a large number of subdistricts. On the 15th day of July, 1925, the "Big Four joint boards" passed a resolution contemplating the addition of a great deal more land to the inter-county district, including that already embodied within the Farley district. This apparently was upon the theory that the original "Big Four" did not cover all the lands in the watershed.

Objection was made by appellees before the joint boards, and consistently continued in the appeal to the district court. Among the grounds thereof was the one that the "Big Four" proceeded under 1924 Code, Sections 7549, 7550, and 7626, rather than Section 7600 thereof, as amended by Chapter 155 of the Laws of the Forty-first General Assembly. No dispute arises between the parties as to what was done: that is, appellants concede that they proceeded under the first three sections named. They are, respectively, as follows:

"7549. After the establishment of a levee or drainage district, if the board becomes convinced that additional lands are benefited by the improvement and should have been included in the district as originally established, it may adopt a resolution of necessity for annexation of such additional land and appoint an engineer with the qualifications provided in this chapter [353] to examine such additional lands, to make a sur-

vey and plat thereof showing their relation, elevation, and conditions of drainage with reference to such established district, and to make and file with the auditor a report as in this chapter provided for the original establishment of such district."

"7550. If said report recommends the annexation of such lands or any portion thereof, the board shall consider such report, plats, and profiles and if satisfied that any of such lands are materially benefited by the district and that such annexation is feasible, expedient, and for the public good, it shall proceed in all respects as to notice, hearing, appointment of appraisers to fix damages and as to hearing thereon; and (if such annexation is finally made), as to classification and assessment of benefits, to the same extent and in the same manner as provided in the establishment of an original district. All parties shall have the right to receive notice, to make objections, to file claims for damages, to have hearing, to take appeals and to do all other things to the same extent and in the same manner as provided in the establishment of an original district."

"7626. Except as otherwise stipulated in this chapter [354] the provisions and procedure set forth in Chapter 353 shall govern and apply to the formation, establishment, and conduct of every levee or drainage district extending into two or more counties, the petition therefor, the giving or publication or service of notice therein, the appointment and duties of all officers or appraisers or commissioners, the making or filing of waivers, reports, plats, profiles, recommendations, notices, contracts, and papers, the classification and apportionment and assessment of lands and all other property, the taking and hearing of appeals, the issuance and delivery of warrants, bonds and assessment certificates, the payment of taxes and assessments, the making of improvements, ditches, drains, changes, enlargements, extensions, and repairs, *the inclusion of lands* [the italics are ours], and the making or performance of every other matter or thing whatsoever relevant to or in any wise connected with such joint drainage or levee district, and the rights, privileges, and duties of all persons, landowners, officers, appellants, and courts."

Section 7600, referred to, before the amendment thereof, read as follows:

"Upon the filing of such petition [for an inter-county levee or drainage district] in each county and the approval of such duplicate bond by the proper auditor, the board of each of such counties shall appoint a commissioner and the commissioners of the several counties so appointed shall meet within thirty days thereafter and appoint a competent engineer who shall also act as a commissioner."

In substance, Chapter 155, Acts of the Forty-first General Assembly, amended the provision just quoted by adding thereto this language:

"Provided, whenever one or more drainage districts in one county outlet into a ditch, drain or natural watercourse, which ditch, drain or natural watercourse is the common carrying outlet for one or more drainage districts in another county, the boards of supervisors of such counties acting jointly may by resolution, and on petition of the trustees of any one of such districts, or one or more landowners therein, in either case such petition to be accompanied by a bond as provided in the preceding section, must initiate proceedings for the establishment of an inter-county drainage district by appointing commissioners as provided in this section and by requiring a bond as provided in the last preceding section and by proceeding as provided by Chapter three hundred fifty-four (354), Code, 1924, and all powers, duties, limitations and provisions of this and the succeeding sections of Chapter three hundred fifty-four (354), Code, 1924, shall be applicable thereto."

Therefore, because of the language just set forth, appellees argue that the above-named Sections 7549, 7550, and 7626 do not apply. Their theory is that Section 7600, supra, as amended, excludes the other three sections aforesaid.

Replying to this, appellants urge that the Acts of the Forty-first General Assembly, as embodied in Chapter 155, contemplated: First, the organization of a new district; and second, the emptying of the waters from a drainage district in one county into the improvements of a drainage district in another. Hence, it is said by them that those situations do not exist in the case at bar, because: First, there is in existence an inter-county district (the Big Four) ; and second, the waters from an

upper intra-county district are not flowing into a lower intra-county district.

I.   So far as the lands involved are concerned which are not already incorporated in some other district, there is no difficulty in solving the problem; for such acreage certainly can be added to the "Big Four," under the provisions of Sections 7549, 7550, and 7626, supra, provided, of course, that the facts and circumstances which are conditions precedent thereto are fully and completely met. *Bird v. Board of Supervisors*, 154 Iowa 692. See, also, *Thompson v. Board of Supervisors*, 201 Iowa 1099; *Glenn v. Marshall County*, 201 Iowa 1003. Such authorization for annexation as is within the purview of Sections 7549, 7550, and 7626 is not abridged or hindered by Chapter 155 of the Acts of the Forty-First General Assembly, supra, so far as lands not already within another district are concerned.

Rather than limiting the right to include such additional territory, the act of the forty-first general assembly was for supplemental purposes, in order to provide greater facilities for initiating proceedings for the establishment of an inter-county district, to alleviate the burdens of the districts in the lower county from increased waters cast upon them by the drainage districts in the higher county. Then interference with the inclusion of more real estate by a resolution of necessity is not prevented by Sub-chapter 155. Were it otherwise, the project of drainage would be greatly handicapped; because, every time a mistake should occur in the omission of ground, under such narrow statutory construction as contended for by appellees, it would mean that the board of supervisors would be without jurisdiction to correct the error, and the entire project would have to wait the institution of new proceedings for the organization of another district.

Manifestly, then, the "Big Four" had a right, under the method adopted by it, to make inclusions not involving any portion of another drainage district. To that extent the action of the joint boards of supervisors was correct.

Parenthetically, it is noted that no argument is here made to the effect that any of this territory was not benefited by the inclusion.

II.   A more serious difficulty, however, is confronted in

disposing of that portion of the joint boards' resolution attempting to include within the "Big Four" territory already incorporated in other drainage districts. Can this be done under Sections 7549, 7550, and 7626, supra? Our answer, so far as general (but not special) purposes are contemplated, must be in the negative.

When the legislature of this state enacted the levy and drainage district acts, it pursued a scheme for the installation of such betterment if the exercise of that jurisdiction "will be of public utility or conducive to the public health, convenience, or welfare." Quite complete operating machinery is provided therefor. Within the general plan is included the necessity of a petition, bond, etc. Furthermore, the legislature took the precaution of meeting, and lending aid for, a situation where the board, after acting in the first instance, "becomes convinced that additional lands are benefited by the improvement and should have been included in the district as originally established." Section 7549, supra. "Annexation of such additional land" is the remedy afforded in that event. Thus there was furnished a full and complete regulatory measure, so far as intra-county land not included within any drainage district is affected.

Similar enabling clauses for the organization in the first instance, and afterwards the extension to include omitted realty, in the second place, are amply provided for inter-county projects (see Section 7626, supra), where the territory of another drainage district is not trespassed upon. For reasons sufficient unto the lawmakers, they did not desire to incorporate within the processes just reviewed the second appropriation of ground (for drainage district purposes) already within a drainage organization. Manifestation of their intention and purpose in this regard is revealed by the specific acts relating to the formation of subdistricts, all inclusive districts, and districts where the higher title holders impose increased hardships on the lower owners, as illustrated by Sections 7490, 7554, 7572 of the 1924 Code, and Chapter 155 of the Acts of the Forty-first General Assembly.

Without the desire to exclude the latter from the former, there would have been no reason for the particular legislation permitting the incorporation of a region already appropriated

for a prior improvement. Attributable to the lawmakers is not the enactment of a useless or needless provision. If, then, it was intended to make no distinction between occupied and unoccupied soil, the sections of these chapters authorizing the inclusion of land for the second time would be entirely surplusage, both as regards intra- and inter-county districts.

Two general classifications are made: the one relates to unorganized land, and the other to that which is organized. Do Sections 7549, 7550, and 7626 apply to both indiscriminately? Clearly not, so far as permitting a district constituted under the first general plan to annex territory already appropriated by an existing district is concerned. Otherwise, there would be no need for the two methods of organization. The first, in such event, would be sufficient without the second; but the legislature intended differently. Wherefore, in order to exclude one from the other, and make clear the line of demarcation between them, it was necessary for the enactment of the second organizing method, to cover jurisdiction not granted in the first.

Resultantly, with the organization of the ''Big Four'' thus limited in its jurisdiction, it could not, through Sections 7549, 7550, and 7626, supra, obtain territory already included within other districts, unless there was utilized the special enactments permitting the inclusion of ''appropriated'' territory within a new district. Elucidation at this juncture may be obtained by suggesting that, were this not true, Sections 7549, 7550, and 7626 would entirely overcome and nullify the acts for the second incorporation of land already covered by a drainage district. Because Section 7421 (the first scheme above discussed) does not permit the formation of a district over land already incorporated in another, it was necessary, in order to supply this deficiency, that there be enacted Sections 7490, 7554, and 7572, supra, and Chapter 155, supra. Moreover, Sections 7549, 7550, and 7626 are auxiliary to Section 7421, but do not supply the deficiency therein, so far as lack of power is concerned to incorporate land already in another district. Therefore, neither 7421 nor 7549, 7550, and 7626 authorize such proceeding; and in order to find said power of inclusion, it is necessary to look to the special provisions made for that purpose, to wit, 7490, 7554, and 7572, supra, and Chapter 155, supra.

In nullifying the action of the joint boards in this regard,

the trial court committed no error. Discrimination must here be made between the general organization of districts and the future inclusion of land thereunder, for general drainage purposes, from the specific remedial acts enabling a district to obtain an outlet, more right of way, new ground for improvements, etc., as permitted by special legislation relating thereto. See Code, 1924, Sections 7560, 7570, 7577, 7578, and other similar enactments. Those matters are not before us now, and we make no pronouncement concerning them.

III. Complaint is made by appellants that the appeal by appellees from the action of the joint boards to the district court was not properly taken, because notice thereof was irregular in form, and not sufficiently served. Under the doctrine announced in *Lundy v. City of Ames*, 201 Iowa 186, and the provisions of Code, 1924, Sections 7519, 7520, and 7521, the district court undoubtedly obtained jurisdiction. Further discussion of this particular proposition can be of no useful purpose to the bar, and it would only serve to unduly lengthen this opinion.

The judgment and decree of the district court is affirmed. —*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.