F. W. Roewe, appellant, v. Marie Pavik, county auditor, Gilbert Ellis et al., members of Board of Supervisors, and Drainage District No. 114, appellees.

Ella Gilchrist, appellant, v. Same defendants, appellees.

No. 48581.

(Reported in 70 N.W.2d 845)

June 7, 1955.

F. C. Gilchrist, of Laurens, and Loth & Melton, of Fort Dodge, for appellants.

James W. Hudson, of Pocahontas, for appellees.

OLIVER, J.—This is an appeal from a judgment of the district court denying appeals of two landowners from the annexation to Drainage District No. 114, in Pocahontas County, of land owned by each of them. Appellants contend that in 1922, when District 114 was organized, there was a decision not to include these lands, which operates as an adjudication that such lands may not be annexed to District 114.

The proceedings to organize District 114 were instituted in 1919, by petition of landowners. Section 1989-a2, 1913 Supplement to Code of Iowa, 1907. The Board of Supervisors proceeded to appoint an engineer. His return or report to the County Auditor with map recommended a drainage district of 7080 acres. The two 160-acre tracts here involved had not been included in the petition for the organization of the district but were included in the first report of the engineer. The Board approved this report July 1, 1920. Section 1989-a3, 1913 Code Supplement. Accordingly the County Auditor gave notice of the day set for hearing, to the owners, occupants, etc., of the land in the proposed district, including the then owners of the two 160-acre tracts here involved.

The respective owners promptly filed objections to the engineer's report and the inclusion of such lands in the district, alleging the lands had adequate drainage facilities and outlets, were dominant to other land in the proposed district and would receive no benefits from it. They asked that the engineer's report, in this respect, be not approved. The Board held several meetings relative to the establishment of the district and the objections thereto but the record does not show any action by the Board upon these objections. In September 1920 the Board by resolution referred the matter back to the engineer with general directions for an amended report and recommendations. October 4, 1920, the engineer filed an amended report recommending certain changes, none of which had reference to the lands here involved. The Board continued final consideration

of the establishment of the district and the objections. In March 1922 the engineer's amended report still proposed to include said lands in the district.

March 31, 1922, the Board published (a second) notice of hearing on May 5, 1922, on the establishment of the proposed district. May 5, 1922, the engineer made "further report and amendments to his former reports" stating certain lands "are not or will not be benefited to any appreciable extent by the construction of the proposed improvements as heretofore and now recommended by me; and I do therefore now recommend that the boundary of the proposed district be changed so as to exclude said lands and recommend said boundary of the district to be as follows:—* * *." This left out of the district, as previously recommended by the engineer, about 2000 acres of land in the west part thereof, including the two 160-acre tracts here involved.

The Board of Supervisors' record of May 5, 1922, in the matter of Drainage District No. 114 recites, "In the Matter of the Establishment of the drainage improvement having been set for hearing by published notice, and after all objections being heard" a resolution was adopted: "that this Board does now approve the report, as now finally amended, including the amendment filed this day", of the engineer; "the Board finds that such drainage improvement as now recommended by said engineer is conducive to the public health, convenience and welfare and to the public benefit and utility and that said improvement is a necessity; and it appearing that claims for damages have been filed" further proceedings were continued to May 16, 1922, and the auditor was directed to appoint appraisers to appraise such damages and report. May 16, 1922, the Board adopted resolutions approving the report of the appraisers and establishing Drainage District No. 114, "in accordance with the report, as now finally amended, of the engineer as approved by the Board of Supervisors."

In 1953 the Board proceeded to annex additional lands to Drainage District No. 114. This was done under sections 455.128 and 455.129, Code of Iowa, 1950 (now Code of Iowa, 1954). An engineer appointed by the Board filed a report recommending that certain lands, including appellants' lands here involved, be annexed to the District. Thereupon the Board adopted a reso-

lution finding the lands were materially benefited by the District and that such annexation was feasible, expedient and for the public good, and fixing a date for hearing upon the report. Notice thereof was given and appellants filed written objections to the inclusion of their lands and appeared and made oral objections thereto.

At the hearing on June 16, 1953, the Board overruled appellants' objections and adopted a resolution reciting in part that the Board "being convinced that certain additional lands were benefited by the improvements of Drainage District No. 114 and that certain lands should have been included in the original establishment of said Drainage District" and having adopted a resolution of necessity, appointed an engineer who reported recommending the annexation of additional lands and the Board being satisfied the lands are materially benefited by the district and that such annexation is feasible, expedient and for the public good, therefore: the following described lands (including the lands here involved) are hereby annexed to Drainage District No. 114.

From this action the two landowners appealed to district court. Trial resulted in judgment dismissing that appeal and this appeal therefrom.

Although the objections of the landowners presented to the Board were based upon various grounds, the appeals are limited to the contention that, in the original proceedings to organize the drainage district there was a decision not to include appellants' lands, which was a judicial determination and was res judicata of the question involved in the annexation proceedings.

Appellants state: "Section 455.128 does not allow annexing land whose inclusion was rejected at the original establishment; for other sections make that rejection final. The annexation must be limited to land not originally considered."

Section 455.128, Code of Iowa, 1950 (now Code of Iowa, 1954) empowers the board to inaugurate and conduct proceedings for the annexation of additional lands to a drainage district (in most respects the same) as provided for the original establishment of a district.

The part of the statute here pertinent is: "if the board becomes convinced that additional lands are benefited by the im-

provement and should have been included in the district as originally established * * *." This is clearly a legislative authorization to the Board to re-examine drainage districts and other lands and to proceed to annex to a drainage district such additional lands as should have been included in the district as originally established. The statute contemplates the correction of errors, unintentional or otherwise, in not including certain lands in a particular drainage district. Nothing in the statute suggests such an annexation must be limited to lands not originally considered for inclusion in the Drainage District in question. The provision should not be so interpreted as to unduly hamper the accomplishment of its evident purpose.

The record of the organization of the original Drainage District does not show the Board of Supervisors ever passed upon the objections of the then owners of appellants' lands. There was no order of the Board excluding these lands from the District or directly referring to them. The action taken by the Board merely established the District recommended by the report of the engineer, as finally amended.

No claim of res judicata properly may be based upon the report or other acts of the engineer. Appellants do not so contend. They argue the engineer's report and the landowners' objections raised that issue for determination by the Board. If this premise be correct, the engineer's report, as finally amended, removed the issue and there was no such issue at the time the Board fixed the boundaries and established the District. Hence, the action of the Board in approving this report and establishing the Drainage District did not constitute the rejection of the inclusion of the lands in question as contended by appellants.

We conclude the record does not establish appellants' claim the omission of their lands from the District in the original organization proceedings was res judicata of the right to annex them under the statute.

The judgment of the district court is affirmed.—Affirmed.

WENNERSTRUM, C. J., and BLISS, GARFIELD, SMITH, HAYS, and THOMPSON, JJ., concur.

LARSON, J., dissents.

LARSON, J. (dissenting)—I am unable to agree with the majority. I feel that at the May 16, 1922, adjourned meeting of the Board of Supervisors there was a judicial determination that the lands in question received no benefit and must be excluded from the newly established Drainage District No. 114 in Pocahontas County, Iowa. There is no question but that the lands were originally included in the engineer's recommendation or plan and that the owners were served due notice that the lands were to be included. Appellants' timely objections and resistance to the proposed plan are clear. The issue was before the Board by proposal, notice and objection, and in its judicial function the Board at that time decided the lands should not be included. It is immaterial that the engineer amended his report and plan just before approval. The trial had begun. The issues had been drawn and all parties were before the Board. Their action was final so as to be appealable, not only by those included against their will, but by anyone adversely affected by the final action of the Board, and they should have done so, if in fact benefit lands were being excluded.

Code section 455.128, I feel, relates to lands excluded by inadvertence, mistake or oversight, and does not relate to lands duly considered by the Board, and that authority in the Board is sufficiently broad. It permits lands to be annexed which were always benefited though never considered by the Board when the new district was formed. If such were found to be the case, the drainage law provides for retroactive payments for those benefits from the time of the original establishment. Code section 455.130. This would be proper only if one obtained benefits and had willfully avoided payment of his just share. It is not proper when, having been duly considered, the lands were found not benefited. It would be improper, because of a later change of Board personnel, which sometimes brings changes in sentiments and favorites, to try the issue over again as to possible benefits, under the provisions of section 455.128, and then attach retroactive assessments. Such procedure is foreign to our idea of final judicial determination. Certainly under such a construction one on the fringe area of a district could be put to

continued expense and costly litigation to defend against repeated efforts to include his land.

I would hold, when once properly considered by the Board, as was done here, such lands cannot thereafter be annexed under the provisions of section 455.128. Until some changes are made to include extended benefits, or a new district is formed, such lands should not later be included. Nothing more could reasonably be contemplated by this and the following two sections of the Code. This interpretation, I feel, would be reasonable and achieve justice, while the one adopted by the majority would often reach the opposite result.

To say the least, it is rather exceptional under our system of jurisprudence to approve a procedure whereby one may be forced to try and retry an issue once decided by a proper tribunal, when it has jurisdiction of the parties and has the subject matter and the issues properly before it. We should make no such exception here, for clearly this Board was performing a long-recognized judicial function, appealable by anyone adversely affected. As no appeal was taken, I would hold the determination final as to all parties and issues involved therein. I would reverse.