**Bob COOK, Alta Cook, Leland Roudybush, Teri Schultz, Larry Cook, Elaine Cook, Randall Cook, Jerry Henning, Cathy Henning and Beverly Weber, Appellants,**

v.

**Rodd McNEAL, Roger Bartenhagen and Jack W. Wilson, Trustees in Behalf of the Muscatine–Louisa Drainage District # 13 of Muscatine and Louisa Counties, Iowa, Appellees.**

No. 98–275.

Supreme Court of Iowa.

Nov. 17, 1999.

Joel D. Yates and Robert K. Clements of Clements Law Firm, Oskaloosa, for appellants.

William Scott Power of Aspelmeier, Fisch, Power, Warner & Engberg, P.L.C., Burlington, for appellees.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and TERNUS, JJ.

NEUMAN, Justice.

This appeal concerns the authority of a drainage district board of trustees to upset the results of an election petition filed with the former board of trustees in accordance with Iowa Code section 468.511 (1997). The district court, ruling in equity, agreed with the new board's decision to void the election because it believed the board rightly considered remonstrances that, if counted, would have defeated the petition. On our de novo review, we conclude the district court deviated from the pertinent statutory scheme. Accordingly, we reverse the judgment of the district court, thereby reinstating the election results.

The material facts are largely undisputed. Plaintiffs are landowners in Drainage District No. 13 located in the eastern Iowa counties of Muscatine and Louisa. The governance of the drainage district is in the hands of a three-member board of trustees. *See* Iowa Code § 468.500 (authorizing landowners to elect trustees for "control and management" of the district). At the time of the decision challenged on this appeal, defendants—Rodd McNeal, Roger Bartenhagen, and Jack Wilson—were the trustees. One of the plaintiffs, Bob Cook, was the immediate past chairman of the board, having served as a trustee for over twenty years.

In December 1996, Cook and others circulated a petition to amend the method for

electing drainage district trustees. Such elections had been based on one vote per landowner. This is the method prescribed for any district organized under Iowa Code chapter 468, unless the voting method is changed pursuant to section 468.511. That statute—which is at the heart of this controversy—pertinently provides as follows:

When a petition asking for the right to vote in proportion to assessment of benefits at all elections for any purpose thereafter to be held within said district, signed by a majority of the landowners owning land within said district assessed for benefits, is filed with the board of trustees, then, in all elections of trustees thereafter held within said district, any person whose land is assessed for benefits without regard to age, sex, or condition shall be entitled to one vote for each ten dollars or fraction thereof of the original assessment under the current classification against the land actually owned by the person in said district at the time of the election. . . .

Iowa Code § 468.511.

The signed petition to amend the voting method was presented by Cook at the regular monthly meeting of the board of trustees held on December 20, 1996. The minutes of the meeting reflect that the board "accepted the petition" and agreed to present it to the auditor "to be filed and counted." The minutes also reveal that one of the landowners who had signed the petition, Charles Gaeta, appeared and asked that his name be withdrawn. The board took no action on the request, directing Gaeta to contact the county auditor.

The trustees subsequently learned that county auditors play no role in the counting or canvassing of petitions submitted under section 468.511. So, at the board's mid-January 1997 annual meeting, it scheduled two further meetings for the purpose of canvassing the vote. The first was held January 23 in Louisa County, the second on January 27 in Muscatine County. In the interim, a regularly scheduled election of trustees occurred. Based on the one-vote-per-landowner method still in existence, Cook was defeated and replaced by defendant Jack Wilson.

Despite the change in board membership that occurred between the meetings held in Louisa and Muscatine counties, the official actions taken were identical. The trustees reviewed each auditor's records and the petition to determine the number and eligibility of voters' signatures. Several citizens appeared for the purpose of requesting the removal of their names from the petition, either because they had changed their minds or because someone had signed in their behalf (as in the case of a spouse). Following considerable discussion, the trustees unanimously agreed that anyone whose name had been affixed to the petition by someone else could have it removed. They also agreed, however, that petitioners who had personally signed the petition by the filing date of December 20, but simply wanted to change their mind, would not be permitted to do so. After making these adjustments, the trustees determined there were 303 eligible voters in the district and that 153 valid signatures had been affixed to the petition. Thus, the measure passed.

Despite these events, the board at its next regularly scheduled meeting voted two-to-one to rescind the election results. The majority favoring rescission expressed the belief that "[t]oo many people felt they were misinformed" about the petition. Noting "they are a different board now," they decided to "have it sent around again" with better explanation.[1]

1. The record reveals that the signatures had been collected on several identical petitions. Each petition recited that the landowners signing it "respectfully petition for the right to vote in proportion to assessment of benefits at all elections for any purpose" as provided by section 468.511. Following this recitation was a verbatim copy of the statute printed just above the signature lines.

Plaintiffs appealed the board's decision to the district court. *See* Iowa Code § 468.83. In its decision affirming the board's action, the district court ruled the board was required to honor requests for removal of signatures before the canvassing was completed. The court also found the trustees violated their fiduciary duties by actively soliciting for a change in the voting method. It did not rest its decision on that point, however, concluding instead that there were sufficient votes in controversy to defeat the petition altogether. This appeal by plaintiffs followed.

## I. Scope of Review.

Iowa Code section 468.91 provides that, except for appeals from drainage board decisions involving compensation or damages for lands taken for right of way, "[a]ll other appeals shall be triable in equity." This case was so tried in the district court. Our review on appeal is, therefore, de novo. Iowa R.App. P. 4.

## II. Issue on Appeal.

 Plaintiffs' challenge to the district court's ruling is three-pronged. They claim the court erred by (1) concluding that the vote was not effective until canvassing was completed; (2) expanding the statutory power of the board by reading into section 468.511 a "seemingly implied" authority to accept remonstrances after filing; and (3) justifying this implied discretionary authority by reference to unrelated portions of the drainage district statute. Defendant trustees counter that the "jurisdiction" of the board to act on the petition did not "attach" until after voter eligibility was determined and the votes counted, thereby authorizing the withdrawal of votes in the interim to effectively defeat the petition.

We are guided in our assessment of these opposing arguments by the maxim that, in construing statutes, courts are bound by "what the legislature said, rather than what it should or might have said." Iowa R.App. P. 14(f)(13). Section 468.511 plainly makes the filing of a petition, signed by a majority of the landowners, the triggering event for a change in voting method. Reduced to its essential elements, the statute states: "When a petition ... signed by a majority of the landowners ... is filed with the board of trustees ... then, in all elections of trustees thereafter held ... [voting shall be based on assessment]." Iowa Code § 468.511.

The district court wisely noted that, as with any election, the examination or "canvass" of the votes necessarily follows the election or, in this case, the filing of the petition. To "canvass" means "to examine (votes) officially for authenticity." Webster's Ninth New Collegiate Dictionary 203 (1986). All agree that is what the board did here. The question is whether this later act of verification somehow changed the filing date to the canvass date as found by the district court. We think not.

In a strikingly similar case, decided over 100 years ago, this court held that "filed" means "filed." *See Seibert v. Lovell,* 92 Iowa 507, 511, 61 N.W. 197, 199 (1894). The statute in controversy involved a process by which "100 legal voters" could file a petition with the auditor requesting the appointment of a "competent engineer or commissioner" to recommend to the board of supervisors the establishment of such drainage ditches and water courses as needed to reclaim low-lying land. *Id.* at 509–10, 61 N.W. at 198 (quoting 1873 Iowa Acts ch. 186). Once the engineer filed a report, the board of supervisors was required by statute to "hear and determine the petition" and take such action as necessary on the proposed improvements. *Id.* at 510, 61 N.W. at 198. A dispute arose because, although the petition presented to the auditor contained the requisite number of signatures, by the time the board acted on the matter "enough petitioners had protested and remonstrated against granting the prayer of the petitioners to reduce the number of petitioners below the legal number." *Id.* This court held the postfiling

remonstrances "were of no effect" because "the question of jurisdiction is to be determined from the petition as it was when filed." *Id.* at 511, 61 N.W. at 199. Summarizing, we said:

> It must be remembered that jurisdiction did not attach as of the date when the board acted, but as of the date when the legal petition was filed. The power to act having been conferred upon the board by virtue of a legal petition, it could not be impaired or taken away by the protests, remonstrances, or attempted withdrawals of some of the petitioners. The question requires no further consideration.

*Id.*

In a slightly later case, relied on heavily by the appellees, this court held that remonstrances filed in connection with a petition to consolidate roadways could be considered. *Dunham v. Fox,* 100 Iowa 131, 135, 69 N.W. 436, 438 (1896). Crucial to the decision, however, was the fact that the remonstrances were filed simultaneously with the petition, evidencing a change of heart by a majority of the petitioners. *Id.* "Had the trustees obtained jurisdiction before the remonstrance was presented," we held, "the case would come within the rule of *Seibert v. Lovell.*" *Id.* at 136, 69 N.W. at 438.

*Seibert,* not *Dunham,* controls the case before us. Only Charles Gaeta sought to withdraw his name from the petition simultaneously with its filing. Although the vote was close, one permitted remonstrance would not have tipped the balance so as to defeat the petition. All other remonstrances and protests were voiced long after the petition was filed and jurisdiction attached.

It is true that other portions of the statute governing drainage district management permit remonstrances. A petition seeking reversion to management by the county board of supervisors, for example, specifically provides for the counting of remonstrances filed at least five days before the hearing set to canvass the votes. Iowa Code §§ 468.533, .534. No such authorization appears in the statutory scheme before us, however, and the district court should not have gone outside the statute to look for it.

Finally, we address the trustees' contention that "public bodies as a matter of law are allowed to reconsider and rescind actions previously taken." The point can hardly be disputed in the context of the case upon which the trustees rely, *Dunphy v. City Council of City of Creston,* 256 N.W.2d 913 (Iowa 1977). There, we summarily rejected the claim that a city council could not embark on a new depot project on a site previously chosen for a parking lot. *Dunphy,* 256 N.W.2d at 921. Clearly the proposition advanced in *Dunphy* has no bearing here. The trustees' sole duty under section 468.511 was to accept the filed petition. Any subsequent canvassing of the signatures would relate back to the authenticity of the petition when filed. Nowhere does the statute vest the board with the discretion to reconsider or rescind the will of the electors evidenced by the number of signers to the petition. *See generally Zilske v. Albers,* 238 Iowa 1050, 1054–56, 29 N.W.2d 189, 191–92 (1947) (discussing general rules governing remonstrance before and after filing, and distinguishing, in context of school consolidation, election by petition from petitions used to place an issue on a future ballot).

We therefore reverse the decision of the district court and remand for entry of a judgment reinstating the election by petition filed December 20, 1996.

**REVERSED AND REMANDED.**