# IN THE COURT OF APPEALS OF IOWA

No. 19-0525
Filed February 5, 2020

**JOHN and LAURI ASKEW, et al.,**
    Plaintiffs-Appellees,

**vs.**

**TRUSTEES OF MULE SLOUGH DRAINAGE DISTRICT,**
    Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Fremont County, Kathleen Kilnoski,

Judge.


        Defendant appeals the district court's decision finding it had improperly

annexed land into the Mule Slough Drainage District.  **AFFIRMED.**


        Robert W. Goodwin of Goodwin Law Office, P.C., Ames, for appellant.

        Matthew G. Woods of Woods, Wyatt & Tucker, PLLC, Glenwood, for

appellee.


        Heard by Tabor, P.J., and Mullins and Schumacher, JJ.

**SCHUMACHER, Judge.**

Defendant Trustees of Mule Slough Drainage District (Trustees) appeal the district court's decision finding it had improperly annexed and reclassified land into the Mule Slough Drainage District (Mule Slough DD). We find the district court properly determined the trustees for the Missouri Valley Drainage District (Missouri Valley DD) could appear as plaintiffs in this action. We affirm the district court decision finding the Mule Slough DD did not properly annex the land in the Missouri Valley DD. The Mule Slough DD did not follow the statutory procedures to accomplish annexation, and it has not presented sufficient legal argument to show why the statutory provisions should not be followed. Furthermore, without annexation, the Mule Slough DD did not have authorization to reclassify the land in question. We agree with the court's conclusion that because there were errors in the annexation proceedings, the annexation in whole must be vacated. We affirm the decision of the district court.

## I.       Background Facts & Proceedings

The Mule Slough DD was created in 1904 by the board of supervisors of Fremont County. *See Monaghan v. Vanatta*, 122 N.W. 610, 611 (Iowa 1909). It consisted of approximately 13.7 square miles or 8811 acres. The West Benton Drainage District (West Benton DD) was formed around 1910. It is to the west of the Mule Slough DD and the west barrier of the West Benton DD is the Missouri River. The West Benton DD consisted of about 5.6 square miles. The Missouri Valley DD was established in 1923. *See Payne v. Mo. Valley Drainage Dist. No. 1*, 272 N.W. 618, 619 (Iowa 1937). It consists of about fifty-six square miles, or

34,000 acres. The Missouri Valley DD is to the north and east of the Mule Slough DD.

In 1924, the Missouri Valley DD constructed the Horse Creek Diversion Ditch. The district court found, "About twenty-seven square miles of the Missouri Valley district drain into the Horse Creek diversion ditch, cross into the Mule Slough district, then leave Mule Slough to the Missouri River outlet." The remainder of the Missouri Valley DD drains south to the Nishnabotna River in Missouri.

In 2013, at the recommendation of the United States Army Corps of Engineers, Mule Slough DD and West Benton DD installed pumping stations to assist in draining water from the area. The total cost of the pumping stations was $1,710,000. In 2017, the Mule Slough DD and the West Benton DD merged into one drainage district called the Mule Slough DD.

Later in 2017, the Mule Slough DD began to take action to annex the portion of the Missouri Valley DD that drained through the Mule Slough DD. Donald Etler, an engineer for Bolton & Menk, Inc., prepared an annexation report, which stated, "Much of the land area lying northeast of the Mule Slough district in the upper Missouri Valley Drainage District did not originally drain to the Mule Slough open ditch." With the construction of the Horse Creek Diversion Ditch, water "was diverted to the Mule Slough open ditch. This latter large better-drained area has benefited by the Mule Slough facilities for 80 years, but the benefited lands' boundary was not reviewed and revised as is now proposed." Etler gave the opinion that approximately 12,890 acres of the Missouri Valley DD were "materially benefited" by the Mule Slough DD facilities, and he recommended the Mule Slough DD "pursue the annexation of the several benefiting parcels described herein."

A Classification Commission report was also prepared, which included all of the land proposed to be annexed and determined "the percentages of benefit each parcel [of land] derives from the combined pumping station improvements." The report listed the landowners whose property benefited from the Mule Slough DD and determined the amount each landowner should pay to assist in the costs of the pumping stations.

The annexation report and classification report were approved by the Mule Slough DD Trustees on April 19, 2017. On May 11, the Mule Slough DD gave public notice it was seeking to annex land in the Missouri Valley DD. The notice listed the specific parcels of land recommended for annexation. A separate public notice on the same date listed the assessment amounts for the landowners in the proposed annexation.

Objections to the annexation were considered at a public hearing on May 31. The Trustees voted to accept the annexation. The issue of reclassification was continued to June 29. At the June 29 meeting, objections were considered. The Trustees then voted to accept reclassification of the annexed property.

On July 7, twelve landowners whose property had been annexed by the Mule Slough DD and the trustees of the Missouri Valley DD filed an action against the Trustees, claiming the statutory provisions for annexation of property to a drainage district had not been followed. On July 21, thirteen landowners[1] plus the trustees of the Missouri Valley DD filed an action against the Trustees, alleging the

---

[1] The plaintiffs in the second action were the same as the ones in the first action, with the addition of one landowner.

Mule Slough DD did not follow statutory provisions for reclassification of property. The two matters were consolidated by the district court.

After the suit was filed, on February 12, 2018, the Trustees sent a letter to affected landowners. The letter stated:

> We are therefore asking each of you at this time (a) to approve and consent to the installation of the pumps that occurred in 2013, and (b) also, if you are a landowner in Missouri Valley Drainage District No. 1, to approve and consent to the formal annexation on May 31, 2017 of lands in Missouri Valley Drainage District No. 1.

The letter provided that if a landowner did not respond, this would be considered approval and consent to the Trustees' actions. Landowners were given ten days to object after receiving the letter. The Trustees state 84.4% of the landowners did not object.

The district court ruled:

> [The Trustees] failed to comply with the procedures set out in Iowa Code section 468.356 [(2017)] for annexation and reclassification of the Missouri Valley drainage district in 2017. [The Trustees] failed to comply with the annexation procedures set out in Iowa Code sections 468.119(1) or, alternatively, 468.119(2). [The Trustees'] reliance on theories of "retroactive consent," "constructive annexation," or "self-annexation" lack a legal basis. There is no persuasive evidence that the pumping stations established in 2013 provide a material or special benefit to plaintiffs' lands or to the Missouri Valley drainage district. Therefore, the annexation and reclassification must be set aside.

Plaintiffs filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), claiming the court should set aside the annexation of all lands from the Missouri Valley DD and the reclassification of those lands, whether or not the landowners had been plaintiffs. The Trustees also filed a rule 1.904(2) motion that asserted the lands in the Missouri Valley DD were being unjustly enriched at the expense of the Mule Slough DD. The court determined the

annexation and classification of all lands by the Mule Slough DD should be vacated. The Trustees now appeal.

## II.      Standard of Review

Under section 468.91, this case was tried in equity. Our review in equity cases is de novo. Iowa R. App. P. 6.907; *Cook v. McNeal*, 602 N.W.2d 353, 356 (Iowa 1999). "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them." Iowa R. App. P. 6.904(3)(g).

## III.      Plaintiffs

The Trustees claim the district court improperly permitted the trustees of the Missouri Valley DD to be plaintiffs in this action, stating the trustees of the Missouri Valley DD have no authority to determine the actions of the Mule Slough DD. They also state the trustees of the Missouri Valley DD do not own any land that was annexed by the Mule Slough DD.

"The powers and duties of the trustees are defined under Iowa Code section 468.526." *Sedore v. Bd. of Trs. of Streeby Drainage Dist. No. 1*, 525 N.W.2d 432, 433 (Iowa Ct. App. 1994). Trustees of a drainage district "have control, supervision, and management of the district for which they are elected." Iowa Code § 468.526. Section 468.120 provides, in part:

> Those parties having an interest in the lands proposed to be annexed have the right to receive notice, to make objections, to file claims for damages, to have hearing, to take appeals and to do all other things to the same extent and in the same manner as provided in the establishment of an original district.

Additionally, "In all appeals or actions for or in behalf of the district, the board and the drainage district it represents may sue as the plaintiffs." Iowa Code § 468.90.

The trustees of the Missouri Valley DD "have control, supervision, and management" of the Missouri Valley DD, and this gives them an interest in the Mule Slough DD's proposed annexation of part of the land in the Missouri Valley DD. *See* Iowa Code §§ 468.120, .526. As a party interested in the proposed annexation, the Missouri Valley DD has the right to make objections and appeal the annexation. *See id.* § 468.526. The trustees for the Missouri Valley DD may file suit representing the drainage district. *See id.* § 468.90. We find the district court properly determined the trustees for the Missouri Valley DD could appear as plaintiffs in this action.

## IV.    Annexation

The Trustees claim the provisions of section 468.356 should not prevent it from annexing the portion of the Missouri Valley DD that drains through the Horse Creek Diversion Ditch and then through the Mule Slough DD. The Trustees claim (1) a just and equitable solution would be to permit the Mule Slough DD to annex the land that benefits from the Mule Slough DD; (2) the land they sought to annex is receiving an unjust enrichment at the expense of the landowners in the Mule Slough DD because they benefit from the pumping stations but are not required to pay their fair share of the cost of the pumping stations; (3) the Missouri Valley DD did not have the right to divert the natural flow of water by means of the Horse Creek Drainage Ditch into the Mule Slough DD; (4) the Missouri Valley DD did not have a prescriptive right to discharge water into the Mule Slough DD without cost; (5) there was substantial compliance with the statute; and (6) a literal construction of the statue would produce absurd, unjust, and inequitable results.

Sections 468.356 to 468.383 apply to drainage districts with pumping stations, such as Mule Slough DD. Section 468.356 provides,[2] in part, "No additional land shall be taken into any such drainage district after the improvements therein have been substantially completed, unless one-third of the owners of the land proposed to be annexed have petitioned therefor or consented in writing thereto."

Section 468.119 is titled, "Annexation of additional lands," and provides:

1. After the establishment of a levee or drainage district, if the board becomes convinced that additional lands contiguous to the district, and without regard to county boundaries, are benefited by the improvement or that the same are then receiving benefit or will be benefited by a repair or improvement to said district as contemplated in section 468.126, it may adopt, with or without a petition from owners of the proposed annexed lands, a resolution of necessity for the annexation of such additional land and appoint an engineer with the qualifications provided in this subchapter, parts 1 through 5, to examine such additional lands, to make a survey and plat thereof showing their relation, elevation, and condition of drainage with reference to such established district, and to make and file with the auditor a report as in this subchapter, parts 1 through 5, provided for the original establishment of such district, said report to specify the character of the benefits received.

2. In the event the additional lands are a part of an existing drainage district, as an alternative procedure to that established by subsection 1, the lands may be annexed in either of the following methods:

a. (1) A petition, proposing that the lands be included in a contiguous drainage district and signed by at least twenty percent of the landowners of those lands to be annexed, shall be filed with the governing board of each affected district.

(2) The board of the district in which the lands are presently included may, at its next regular meeting or at a special meeting called for that purpose, adopt a resolution approving and consenting to the annexation.

b. Whenever the owners of all of the land proposed to be annexed file a petition with the governing boards of the affected

---

[2] Section 468.356 was amended effective July 1, 2019. *See* 2019 Iowa Acts ch. 59, § 162. The amendments were not in effect at the time the district court considered the case and do not affect our discussion of the issues.

districts, the consent of the board in which the lands are then located shall not be required to consent to the annexation, and the board of the annexing district may proceed as provided in this section.

3. If either method of annexation provided for in subsection 2 is completed, the board of the district to which the lands are to be annexed may adopt a resolution of necessity for the annexation of the additional lands, as provided in this section.

4. The right of remonstrance, as provided under section 468.28, does not apply to the owners of lands being involuntarily annexed to an established district.

**A.** In considering the authority of drainage districts, we previously stated:

A drainage district is established for a specific limited purpose and, consequently, possesses its own particular characteristics. *See Reed v. Muscatine-Louisa Drainage Dist. No. 13,* 263 N.W.2d 548, 551 (Iowa 1978); *Miller v. Monona Cty.,* 229 Iowa 165, 169, 294 N.W. 308, 310 (1940). A drainage district has only those powers granted it by the legislature. *Reed,* 263 N.W.2d at 551. Cases concerning the legal status of drainage districts have consistently noted the limited nature of their existence. *Gard v. Little Sioux Intercounty Drainage Dist.,* 521 N.W.2d 696, 698 (Iowa 1994). They have only those powers as the statutes provide. *Id.*

*Sedore*, 525 N.W.2d at 433; *see also Gannon v. Rumbaugh*, 772 N.W.2d 258, 266 (Iowa Ct. App. 2009). In *Cook*, 602 N.W.2d at 356–57, the Iowa Supreme Court rejected an argument that a drainage district board of trustees had implied authority to reject the result of an election petition and concluded the trustees were required to follow the language of the controlling statute.

In order for the Mule Slough DD to annex a portion of the Missouri Valley DD, the Mule Slough DD was required to follow the statutory procedures in sections 468.119 and 468.356. We reject Mule Slough DD's claims that it should be able to bypass the statutory requirements for annexation of land in another drainage district based on theories of equity, unjust enrichment, the natural flow of water, or prescriptive rights.

**B.** The Trustees alternatively contend they substantially complied with the statutory requirements in section 468.356 because they sent the landowners letters seeking retroactive consent to the annexation. They state they sent out 205 letters and only thirty-two people objected to the annexation. Because the letter stated the Trustees would consider a landowner had consented unless they affirmatively objected and many failed to object, the Trustees state 84.4% of the landowners consented to the annexation. Section 468.356 permits annexation if "one-third of the owners of the land proposed to be annexed have petitioned therefor or consented in writing thereto."

The Trustees cite to *Hicks v. Franklin County Auditor*, 514 N.W.2d 431, 435 (Iowa 1994), which states,

> When reviewing drainage proceedings of boards of supervisors we have applied three principles: the drainage statutes shall be liberally construed for the public benefit; strict compliance with statutory provisions is required to establish a drainage district, while substantial compliance is sufficient as to repairs or improvements; and the procedural requirements should not be too technically construed.

This case, however, does not involve repairs or improvements in a drainage district, where substantial compliance with statutory provisions would be sufficient. *See Hicks*, 514 N.W.2d at 436–37. Under section 468.119(1), a drainage district is required to follow certain procedures "provided for the original establishment of such district," for the annexation of land. The statutory provision for annexation of land by a drainage district "is clearly a legislative authorization to the board to re-examine drainage district and other lands and to proceed to annex to a drainage district such additional lands as should have been included in the district as

originally established." *Roewe v. Pavik*, 70 N.W.2d 845, 847 (1955). The Iowa Supreme Court has stated:

> The powers of the board of supervisors in respect to these matters are contained in the provisions of the statutes pertaining to the establishment of drainage districts, . . . and such statutes are strictly construed, and the powers exercised by such board must be limited to the express provisions found in the statute, and such additional implied powers necessary to carry out those expressed.

*Mitchell Cty. v. Odden*, 259 N.W. 774, 780 (1935) (citation omitted).

We determine strict compliance, rather than substantial compliance, with the statutory procedures is required for annexation of land by a drainage district. *See Hicks*, 514 N.W.2d at 435. The Trustees did not strictly comply with the requirements in section 468.356. The statute requires "one-third of the owners of the land proposed to be annexed have petitioned therefor or consented in writing." Iowa Code § 468.356. There was no written consent by the landowners prior to the Trustees' vote to annex the land. In the retroactive request for consent, in addition to the late timing of the request, by assuming the landowners consented if they did not object, the Trustees did not obtain consent in writing from the landowners, as contemplated by section 468.356.

The Trustees claim section 468.19 permits them to consider the lack of objection to the annexation as consent to the annexation. This section provides:

> Any person, company, or corporation failing to file any claim for damages or objections to the establishment of the district at or before the time fixed for said hearing, except claims for land required for right-of-way, or for settling basins, shall be held to have waived all objections and claims for damages.

Iowa Code § 468.19; *Peterson v. Bd. of Trs. of Drainage Dist. No. 5*, 625 N.W.2d 707, 710 (Iowa 2001). Under section 468.19, if a complaint is not made before the

drainage district trustees it cannot be considered by the district court. *Simpson v. Bd. of Supervisors of Kossuth Cty.*, 162 N.W. 824, 827 (Iowa 1917). We conclude the section applies to instances where there had been a lack of objection once notice has been properly provided, not an original proceeding. *See Naeve v. Humboldt Cty. Drainage Dist. No. 126*, No. 13-0929, 2014 WL 3931256, at *6 (Iowa Ct. App. Aug. 13, 2014) ("It is not unreasonable to charge objecting landowners—who had notice—with knowledge of the statutory procedures.").

Furthermore, the Trustees did not meet the requirements of section 468.119. The Trustees did not follow section 468.119(1) because they did not adopt a resolution of necessity. The minutes from the meeting to approve the annexation do not show the Trustees made a finding that the lands proposed to be annexed would be benefited from the annexation. The Trustees hired an engineer, but the engineer's report does not contain "a survey and plat thereof showing [the additional land's] relation, elevation, and condition of drainage with reference to such established district." *See* Iowa Code § 468.119(1).

Section 468.119(2)(a) requires a petition "signed by at least twenty percent of the landowners of those lands to be annexed." There is no claim this requirement was fulfilled. Section 468.119(2)(b) applies when "the owners of all of the land proposed to be annexed file a petition with the governing boards of the affected districts." There is also no claim this provision applies under the circumstances of this case.

We find the Trustees did not sufficiently comply with the requirements in sections 468.119 and 468.356 for the annexation of land by a drainage district.[3]

**C.**     The Trustees assert the provisions of sections 468.119 and 468.356 should not be applied because application of the statutes leads to absurd results. "Under the absurdity doctrine, a court declines to follow the literal terms of the statute to avoid absurd results." *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 534 (Iowa 2017). Regarding the absurdity doctrine, the Iowa Supreme Court stated, "It can be utilized, in rare cases, to overcome the plain meaning of the words of a statute. The doctrine, however, must be used sparingly and only in circumstances when the court is confident the legislature did not intend the result required by literal application of the statutory terms." *Id.* at 540.

The statutory provisions concerning annexation of land by a drainage district "is not the enactment of a useless or needless provision." *Farley Drainage Dist. No. 7 v. Big Four Joint Drainage Dist.*, 221 N.W. 589, 591 (Iowa 1928). The court stated:

> When the Legislature of this state enacted the levee and drainage district acts, it pursued a scheme for the installation of such betterment, if the exercise of that jurisdiction "will be of public utility or conducive to the public health, convenience, or welfare." Quite complete operating machinery is provided therefor. Within the general plan is included the necessity of a petition, bond, etc. Furthermore, the Legislature took the precaution of meeting, and lending aid for, a situation where the board, after acting in the first instance, "becomes convinced that additional lands are benefited by the improvement and should have been included in the district as originally established." "Annexation of such additional land" is the remedy afforded in that event.

---

[3] Even on the ground of substantial compliance, we find the Trustees' request for retroactive consent did not substantially comply with section 468.356. Furthermore, the Trustees did not substantially comply with the requirements in section 468.119(1) and subsection (2) does not apply to the facts in this case.

*Id.* (citations omitted).

We find application of sections 468.119 and 468.356 does not lead to absurd results. The statutes do not prohibit the Mule Slough DD from annexing additional land, but they set forth procedures for accomplishing this goal. The Mule Slough DD did not follow the proper procedures to achieve the result they sought. The legislature provided procedures for a drainage district to annex land, and it is not an absurd result to state these procedures should be followed.

We affirm the district court decision finding there was no proper annexation of the land in the Missouri Valley DD. The Mule Slough DD did not follow the statutory procedures to accomplish annexation, and it has not presented sufficient legal arguments to show why the statutory provisions should not be followed.

## V. Classification Commission

The Trustees contend the district court should have approved the report of the Classification Commission. Their arguments are based on the assertion the court should have permitted the Mule Slough DD to annex the part of the Missouri Valley DD it determined benefited from the pumping stations in the Mule Slough DD. We have concluded the Mule Slough DD did not follow the statutory procedures to properly annex the land. Without annexation, the Mule Slough DD did not have authorization to reclassify the land in question. We affirm on this issue.

## VI. Scope of Relief

In ruling on plaintiffs' rule 1.904(2) motion, the district court vacated the annexation and reclassification of all of the land the Mule Slough DD voted to

annex and reclassify.  The Trustees claim the district court's decision should apply only to the plaintiffs and the court's ruling should not apply to landowners who were not parties to the case.

The district court relied upon section 468.97, which provides:

> In any case where the decree has been entered setting aside the establishment of a drainage district for errors in the proceedings, and such decree becomes final, the board shall rescind its order establishing the drainage district, assessing benefits, and levying the tax based thereon, and shall also cancel any contract made for construction work or material, and shall refund any and all assessments paid.

The court stated, "Sections 468.119 and 468.120 contemplate that annexation proceedings are treated similarly to drainage district establishment proceedings."

We agree with the court's conclusion that because there were errors in the annexation proceedings, the annexation in whole must be vacated.  *See* Iowa Code § 468.97.

We affirm the decision of the district court.

**AFFIRMED.**